VERN WALDORF, Plaintiff-Appellee, v. JAMES MARLAS, Defendant-Appellant.

First District (5th Division) No. 76-191

Opinion filed December 23, 1977.

 

Glynn J. Elliott, Jr., of Elliott, Carrane & Uruba, and D. L. Bertelle, both of Chicago, for appellant.

Klohr, Braun, Lynch & Smith, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from an order confirming a judgment by confession on a promissory note executed by him in favor of plaintiff. He contends that the note is usurious in contravention of section 4 of the Interest Act. Ill. Rev. Stat. 1973, ch. 74, par. 4.

Plaintiff brought this action to enforce a $4,500 promissory note executed by defendant on December 15, 1974, and due on June 15, 1975. The note carried an interest rate of "10 percent per annum after maturity until paid." Judgment on the note was confessed on behalf of defendant on June 25, 1975, and the court entered judgment on June 30, 1975.

Thereafter, defendant sought to open the judgment. In his amended answer, defendant admitted he signed the note, but set forth two counterclaims, neither of which are pertinent to this appeal. In addition, he alleged that the note was usurious because it carried an interest rate in excess of the eight percent per annum allowed by section 4 of the Interest Act. (Ill. Rev. Stat. 1973, ch. 74, par. 4.) According to defendant's amended answer, the note was a "renewal note of a prior loan." Defendant asserted that plaintiff had agreed to loan him $10,000 "so that defendant would, in turn, loan that sum to Food Specialties." In an affidavit accompanying his amended answer he stated that plaintiff was a consultant for Fontana Foods, which he owned. He further stated that in loaning Food Specialties this money "it was the hope of both parties that Food Specialties, Inc. would develop the product lines that would aid Fontana Foods Co. and himself * * *."

In accordance with section 6 of the Interest Act (Ill. Rev. Stat. 1973, ch. 74, par. 6) he asked that plaintiff's claim be reduced by the $1,450 in interest already paid plus a penalty of twice the total interest paid or

$2,900. Based on these allegations the court opened the judgment and granted defendant a trial at which the following pertinent facts were adduced.

### For plaintiff
#### Vernon Waldorf, on his own behalf

He is the payee on the note. Although defendant sent him a check for $450 in January, 1975 representing interest due on the note, defendant has not paid him anything on the principal.

At this point plaintiff rested his case and both parties moved for a directed verdict. The court denied both motions.

### For defendant
#### Roman Edwards

He is the secretary-treasurer of Food Specialties, Inc., which did business with Fontana Foods. In 1973, defendant gave him an interest-free loan. Although he never discussed a loan to Food Specialties, Inc., with plaintiff, he admitted on cross-examination that defendant told him that the money for the loan came from plaintiff.

#### Hugh Wilkerson

He is the president of Food Specialties, Inc. Defendant loaned Food Specialties money. Defendant drew the check on his personal account and made it payable to Food Specialties. He never had any discussion with plaintiff regarding this loan. Although Food Specialties did business with Fontana Foods, which defendant owned, defendant did not have a financial interest in Food Specialties.

#### Vernon Waldorf, under section 60

He owns Mardel, Inc., which does consulting work for Fontana Foods. On June 15, 1973, he loaned defendant $10,000 in the form of two personal checks for $5,000 each. He made the checks payable to defendant, who personally guaranteed the loan. In return defendant gave him two $5,000 promissory notes payable in one year and bearing an interest rate "of 10 percent per annum after maturity until paid." Defendant said he was going to use the money for business. He understood that Fontana Foods was short on capital.

In June 1974, defendant paid him $1,000 representing the interest due on the two notes. The following month defendant paid him $1,000 toward the principal. At this time two new promissory notes were drawn for $4,500 each. These notes also bore 10 percent per annum interest rates and were payable in six months. Subsequently, defendant paid off one of the

notes. On December 15, 1974, defendant renewed the remaining note by executing the present note.

Defendant suggested the interest rate. Defendant did not tell him of an interest rate limit and he knew of none. Business loans he had received bore interest rates over 10 percent per annum.

*James Marlas, defendant*

He is the president of Fontana Foods and the maker of this note. Prior to obtaining the loan, he talked with plaintiff regarding various problems of Fontana Foods and Food Specialties. They also discussed the prime interest rate in order to arrive at a fair interest figure for the loan. Plaintiff told him it was over 10 percent. Because plaintiff wanted a written instrument, he "prepared the note at his [plaintiff's] direction." He deposited the funds in his personal account.

On cross-examination he admitted informing plaintiff that he intended to lend the money he borrowed from plaintiff to several individuals he did business with.

He also acknowledged that he owns many different corporations in the food business as well as the Marlas Investment Company, a real estate concern. He is familiar with financing and borrowing money. However, he never told plaintiff that the interest rate was improper.

On redirect examination he stated that all loan payments to plaintiff were drawn on his personal account.

OPINION

Defendant contends that the 10 percent per annum interest rate on the note is usurious because it exceeds the 8 percent per annum limit provided in section 4 of the Interest Act. (Ill. Rev. Stat. 1973, ch. 74, par. 4.) Because he raised this defense in his amended answer to plaintiff's complaint he asserts, citing *Edwards v. Willcutts* (1974), 20 Ill. App. 3d 699, 313 N.E.2d 529, that the burden fell on plaintiff to plead and prove that the instant loan fell within one of the exceptions to the 8 percent limit enumerated in section 4. He argues that plaintiff failed to do this and concludes therefore that the court erred when it did not grant his motion for a directed verdict at the conclusion of plaintiff's case.

■■ A verdict ought to be directed only where all the evidence viewed in the aspect most favorable to the party against whom the motion is directed so overwhelmingly favors the movant that no contrary verdict could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Here, in reply to defendant's amended answer, plaintiff alleged that the note was not usurious because it fell within the business loan exception set forth in section 4(c) of the Interest

Act. (Ill. Rev. Stat. 1973, ch. 74, par. 4(c).) As it existed when this note was drawn, section 4(c) excepted from the 8 percent interest limit:

"Any business loan * * * to a person owning and operating a business as a sole proprietor * * * transacted solely for the purpose of carrying on or acquiring the business of such * * * persons;* * *." Ill. Rev. Stat. 1973, ch. 74, par. 4(c).

■■ Although defendant argues that plaintiff failed to prove during his case in chief that defendant borrowed this money solely for the purpose of carrying on his business, he ignores statements made in his verified answer and affidavit. Admissions in pleadings are proper evidence. (*Mooney v. Underwriters at Lloyd's, London* (1965), 33 Ill. 2d 566, 213 N.E.2d 283.) Defendant admitted in his affidavit that in loaning Food Specialties, Inc., the funds obtained from plaintiff "it was the hope of both parties that Food Specialties, Inc. would develop product lines that would aid Fontana Foods Co. and himself* * *." In light of this admission we are unable to say that the evidence presented during plaintiff's case in chief so overwhelmingly supports defendant's position that no contrary verdict could stand.

Defendant nonetheless contends that even if this affidavit raised a sufficient defense for opening the judgment, it cannot also invalidate the defense. However, "[t]rial courts have the power to review orders made by them until final adjudication* * *." *James C. Wilborn & Sons, Inc. v. Heniff* (1965), 56 Ill. App. 2d 217, 223, 205 N.E.2d 771, 775.

Defendant also contends that the verdict is against the manifest weight of the evidence. Specifically he asserts that plaintiff failed to prove that defendant used the proceeds "solely for the purpose of carrying on or acquiring" business (Ill. Rev. Stat. 1973, ch. 74, par. 4(c)) because the two loans were personal loans between individuals. He points out that plaintiff drew the loan checks on his personal account. Similarly, defendant deposited the funds in and wrote all interest and principal checks from his personal account. In addition, he maintains he personally guaranteed repayment and loaned the funds to Edwards and Wilkerson personally out of friendship.

■■ To be against the manifest weight of the evidence, an opposite result must be clearly evident and the verdict must be palpably erroneous. (*Jenkins v. Dearborn Securities Corp.* (1976), 42 Ill. App. 3d 20, 25, 355 N.E.2d 341, 345.) We do not find this to be the case here. In addition to defendant's admission in his affidavit that he loaned Food Specialties $10,000 in order to promote Fontana Foods, sufficient evidence was adduced during defendant's presentation at trial to support this verdict. Contrary to defendant's suggestion that he loaned the funds he borrowed from plaintiff to Edwards and Wilkerson as individuals, Wilkerson testified that defendant made the check payable to Food

Specialties. Wilkerson also admitted that Fontana Foods was financially tied to Food Specialties. Moreover, plaintiff testified that defendant told him that he was going to use these funds for business. Defendant confirmed this fact when on cross-examination he acknowledged telling plaintiff he was loaning the money to business associates. Defendant also admitted that in arriving at a fair interest rate they discussed prevailing business interest rates. When considered together, these facts were sufficient for the court to conclude that defendant used the borrowed funds to carry on his business, Fontana Foods. Certainly the court's conclusion was not so palpably erroneous as to require us to reverse its decision.

*Metcoff v. Mutual Trust Life Insurance Co.* (1975), 33 Ill. App. 3d 1059, 339 N.E.2d 440, upon which defendant relies is clearly distinguishable. There Eli and Celia Metcoff borrowed certain monies and then loaned these funds to two of their children, who invested them. Unlike here, Metcoffs' had no financial interest in the investment. Defendant in the instant case admitted that the purpose of the loan was to increase the business of his company, Fontana Foods.

Alternatively, plaintiff has also raised the defense of estoppel claiming that defendant suggested the interest rate (*e.g., Rogus v. Continental Illinois National Bank & Trust Co.* (1972), 4 Ill. App. 3d 557, 281 N.E.2d 346). However, in light of our disposition of defendant's first contention we need not consider this issue.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.