PREMIER ELECTRICAL CONSTRUCTION COMPANY, Plaintiff-Appellant and Cross-Appellee, v. LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (4th Division)   No. 83—1000

Opinion filed December 27, 1984.—Rehearing denied May 16, 1985.

Patrick Mazza and Kurt David Baer, both of Chicago (Patrick Mazza & Associates, P.C., of counsel), for appellant.

Sidney E. Morrison and Jeffrey T. Saltz, both of Morrison & Kamins, P.C., of Chicago, for appellees.

JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, Premier Electrical Construction Company (Premier), appeals from orders of the Cook County circuit court which, pursuant to the defendants' (hereafter owners) motions, dismissed count I of its amended complaint seeking foreclosure of a mechanic's lien, dismissed count II of its amended complaint seeking recovery based upon breach of an oral contract, and denied Premier leave to amend its complaint to include a claim for unjust enrichment. The owners cross-appeal from the trial court's order denying their motion to tax fees and costs against Premier.

The parties raise, *inter alia*, the following questions for our review:

1. Whether the trial court in dismissing count I properly interpreted a waiver of mechanic's lien to date executed by Premier to operate as a final waiver of lien rights.

2. Whether the trial court properly dismissed count II of the amended complaint because it was inconsistent with prior sworn statements by Premier that were part of the record.

3. Whether the trial court properly denied Premier's motion for leave to file an amended complaint alleging unjust enrichment.

4. Whether the form of owners' motion to strike or dismiss Premier's amended complaint was improper and so prejudicial to Premier that it requires reversal and remandment.

5. Whether the trial court abused its discretion in denying owners' motion to tax fees and costs against Premier pursuant to section 2–611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2–611), which sought such fees and costs on the ground that count II of Premier's amended complaint was untrue and made by Premier without reasonable cause.

We reverse and remand the dismissal of counts I and II, and affirm denial of leave to file Premier's unjust enrichment claim and owners' motion to assess fees and costs against Premier.

Premier's original verified complaint filed December 9, 1981, sought foreclosure of a mechanic's lien and other relief from La Salle National Bank (La Salle Bank) as trustee under Trust No. 100819; Fulton House Associates (Fulton House), an Illinois limited partnership and beneficial owner of the bank trust; Wolf Point Landing Partners (WPLP), an Illinois general partnership and one of the partners of Fulton House; Harry Weese (Weese), a general partner of WPLP and general partner of Harry Weese & Associates, the architectural firm hired by Fulton House; Continental Illinois National Bank & Trust Co. (Continental), the mortgage lender for Fulton House; and E. W. Corrigan

Construction Company (Corrigan), general contractor on the project. La Salle Bank, Fulton House, WPLP, Weese, and Continental will be referred to collectively as "owners" where appropriate. Corrigan is not a party to this appeal.

Premier's complaint alleged that in June 1979, WPLP and Corrigan entered into a written contract to convert the Fulton House cold storage warehouse building at 345 North Canal Street in Chicago from a 16-story brick warehouse to condominium apartments and office space (hereinafter referred to as the "Fulton House project"). It further stated that on June 21, 1979, Corrigan entered into a written subcontract with Premier whereby Premier became the electrical subcontractor for the Fulton House project. Count I of the complaint, directed against the owners, Corrigan, and "unknown owners," sought, *inter alia,* foreclosure of a mechanic's lien for $90,000 for electrical work Premier alleged it had provided on the Fulton House project and for which it had not been paid. Count II, directed against Corrigan, alleged that Corrigan made numerous requests for additions, extras and changes to Premier's subcontract which substantially increased the cost of the work and materials provided and that after allowance of all credits there remained due and owing to Premier the sum of $431,045.24, which Corrigan refused to pay.

On January 14, 1982, La Salle Bank filed an answer to the complaint alleging that it held title to the premises as a naked-land trustee with no further interest therein and requested that Premier's complaint against it therefore be dismissed with prejudice. Nevertheless, on January 29, La Salle, Continental, and Fulton House filed their "motion to dismiss or in the alternative to strike complaint." The motion requested that the complaint be dismissed pursuant to section 48 of the Civil Practice Act (now Ill. Rev. Stat. 1981, ch. 110, par. 2—619), because (1) Premier had fully and finally waived and released any and all claims for a lien because it had executed a final waiver of lien; (2) Premier had failed to perfect the mechanic's lien claimed in count I of the complaint; (3) Premier had no right to sue them for any sums claimed to be due from Corrigan or to claim a lien; and (4) the allegations in count I failed to conform to the requirements of the Mechanics' Liens Act (Ill. Rev. Stat. 1981, ch. 82, par. 1 *et seq.*), and were substantially insufficient in law. In the alternative, the motion alleged that the complaint should be dismissed pursuant to section 45 of the Civil Practice Act (now Ill. Rev. Stat. 1981, ch. 110, par. 2—615). In further support, the motion alleged that the complaint failed to identify what labor and material were allegedly provided, failed to allege the total amount due, and failed to allege that the owners had autho-

rized or agreed to any amounts claimed. In support of their motion pursuant to section 2—619 of the Code of Civil Procedure, the owners included the affidavit of Daniel O'Keefe, an employee of Fulton House, which stated in pertinent part that in reliance on Premier's lien waiver, Fulton House had authorized payment to Premier of the amount shown on the pay-out note which had accompanied the lien waiver.

On February 9, Premier filed its motion in opposition to the motion of the owners to dismiss or strike the complaint, arguing that the waiver was not meant by the parties to be a final waiver of lien and that the complaint was factually sufficient.

On March 23, before the trial court ruled on the owners' motion to strike or dismiss, Premier filed a motion for leave to file an amended complaint. This proposed amended complaint was directed against the original defendants as well as numerous parties not named in the first complaint. In proposed count I for foreclosure of mechanic's lien, Premier first alleged in pertinent part that Premier entered into a subcontract with Corrigan on June 21, 1979, in the amount of $511,394, under which Premier agreed to provide labor and materials for electrical work at Fulton House in accordance with the terms of the subcontract and certain drawings, plans and specifications prepared for that purpose and made part of the subcontract. These allegations were realleged and incorporated into most of the subsequent counts of the proposed complaint.

Count I further alleged that during the course of construction, numerous unusual, unforeseen and unanticipated job conditions were encountered, including but not limited to structural defects caused during the thawing of the building (*e.g.*, collapse of a substantial portion of one wall of the building), and vast structural differences in the actual physical construction of the building as opposed to what was reflected in the drawings. Premier claimed that this situation necessitated several field changes resulting in delays, unanticipated materials needs and additional costs. The complaint alleged in substance that the original subcontract did not cover these extras, that the parties had a customary practice between them with regard to the subcontract such that the owners knew that the waiver of lien was not intended to accurately reflect the full current subcontract price including all extras, that it was a matter of trade usage in the industry for a subcontractor to execute a waiver of lien that did not accurately reflect the full current subcontract price including all extras, and that Premier was entitled to a mechanic's lien in the amount of $150,000 with statutory interest.

Count II of the proposed amended complaint sought recovery of $431,045.24, the full value of the extras Premier alleged to have provided on the project, based on the owners' breach of an oral contract with Premier to provide these extras.

Count III of the amended complaint was directed against Corrigan and sought recovery of $431,045.24 based upon breach of the electrical subcontract.

Count IV sought recovery of the value of the extras from the owners based upon unjust enrichment. Count V consisted of a claim for reformation of the subcontract and was directed against Corrigan. Count VI was a fraud claim also directed against Corrigan.

The trial court ruled on Premier's motion to file an amended complaint on April 28. It denied Premier leave to file count I (foreclosure of mechanic's lien), count II (breach of oral contract), and count IV (unjust enrichment) of the proposed complaint and granted leave to file the remaining counts. The court also denied Premier leave to withdraw its original verified complaint.

Premier filed its amended verified complaint on May 12. In this pleading, Premier first made several allegations applicable to all counts. These allegations were substantially similar to those it had made in count I of its proposed amended complaint which it had realleged and incorporated into the subsequent counts of that document. Count I of the amended complaint sought foreclosure of mechanic's lien and was substantially similar to the latter portion of count I of the proposed amended complaint. (The owners have not argued either before the trial court or in this appeal that Premier's amended count I deviated from the trial court's order denying Premier leave to file an amended count. Instead, as will be stated more fully below, owners argued before the trial court and claim in this appeal that the count should be stricken with prejudice because of the executed lien waiver or dismissed for failure to state a claim.)

Count II of the May 12 amended complaint sought recovery based upon owners' breach of an oral contract. The count was substantially similar to count II of Premier's proposed amended complaint which the trial court had denied leave to file. (As with count I, owners have not argued in this appeal, nor did they argue below, that Premier's amended count II was improper. Instead, owners claimed before the trial court and contend in this appeal that amended count II was properly stricken with prejudice because of prior inconsistent sworn statements by Premier that were part of the record, or properly dismissed for failure to state a claim.)

The remaining counts of the amended complaint were the same as

those Premier had been granted leave to file, except that proposed count IV seeking recovery directly from the owners based upon unjust enrichment was not included.

On June 9, owners filed a motion to dismiss or in the alternative to strike portions of the amended complaint. The motion was substantially similar to their previous motion to the same effect regarding Premier's original verified complaint, and adopted in support the previously filed affidavit of O'Keefe. Premier filed a motion in response, to which the owners replied. Premier also later filed a motion for leave to file *instanter* the affidavit of Michael Hughes, vice-president of Premier, in support of its memorandum in opposition to the owners' motion to dismiss, which the court subsequently granted.

On October 8, the court ruled, *inter alia*, that count II of the amended complaint was stricken with prejudice and leave to amend that count was denied because it was inconsistent with prior sworn statements part of the record. Subsequently, on November 18, the court granted owners' motion to dismiss count I of the amended complaint with prejudice because of the lien waiver executed by Premier. The court later also denied Premier's motion to reconsider these rulings.

Premier appeals from the rulings which dismissed counts I and II and denied it leave to file amended count IV for unjust enrichment. Owners cross-appeal from the trial court's order denying their motion to tax fees and costs against Premier pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611). All notices of appeal were timely filed.

## I

### DISMISSAL OF COUNT I

■ Premier claims that the trial court erred in dismissing count I of the amended complaint on the ground that Premier's previously executed waiver of lien barred such foreclosure. Premier argues that the affidavits of O'Keefe on behalf of the owners and Hughes on behalf of Premier created issues of fact regarding whether the parties intended the waiver of lien to constitute a final waiver and whether the owners acted in innocent, good-faith reliance on the waiver when they authorized payment in accordance with the pay-out note which accompanied the waiver of lien, as shown by the customary practice between the parties and trade usage in the industry. We agree that innocent, good-faith reliance, customary practice and trade usage were disputed factual issues which precluded dismissal of count I.

Premier's original verified complaint and amended complaint included as exhibits the lien waiver, contractor's affidavit, and pay-out note signed and executed by Hughes as vice-president on behalf of Premier. The documents recited that Premier's work on the project had been completed on May 31, 1981. The lien waiver further stated in essence that Premier waived any right to claim a mechanic's lien on the Fulton House property for sums due Premier on account of work "furnished to this date." The lien waiver was dated July 13, 1981. The contractor's affidavit similarly stated that "all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers ***."

In dismissing count I of the amended complaint, the trial court stated that "the waiver of lien is in defense of Premier's claim" and granted the motion to dismiss with regard to La Salle Bank, Fulton House, and Continental. Similarly, in denying Premier's motion to vacate the order dismissing count I, the trial court observed that Premier "had primary responsibility for protecting its lien rights" and that "[t]he election to waive the lien rights was voluntarily done by the plaintiff, and the plaintiff is bound by its sworn documents."

■■ Generally, where the terms of a waiver of lien are clear and unambiguous, extrinsic evidence which varies from or contradicts such terms cannot be considered in order to determine the intent of the parties; this rule applies, however, only when the party against whose property a lien is sought has relied upon the waiver of lien in innocence and good faith. (*Luczak Brothers, Inc. v. Generes* (1983), 116 Ill. App. 3d 286, 298, 451 N.E.2d 1267; see also *Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 165-66, 430 N.E.2d 631.) Whether there has been such innocent, good-faith reliance is a question of fact. (*Luczak Brothers, Inc. v. Generes* (1983), 116 Ill. App. 3d 286, 298, 451 N.E.2d 1267; see also *Contract Builders Service Corp. v. Eland* (1981), 101 Ill. App. 3d 366, 372-73, 428 N.E.2d 178.) In addition, questions of customary practice between the parties and trade usage in the industry are also appropriately raised in the context of the effect of a subcontractor's lien waiver. *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970), 46 Ill. 2d 522, 530-32, 264 N.E.2d 134.

Here, Premier and the owners disputed in their respective affidavits whether there had been innocent, good-faith reliance upon Premier's waiver of lien, the customary practice between them, and trade usage regarding subcontractor's waivers of lien. Hughes' affidavit gave a detailed recounting of specific instances where Premier was directed to perform additional work beyond the scope of its subcontract

with the assurance that it would be compensated for these extras. He also gave a detailed accounting of specific instances where payment to Premier was authorized on the basis of lien waivers and pay-out notes which all parties knew did not accurately reflect the full, up-to-date subcontract price. For example, in support of its claim that the owners knew of the true status of Premier's subcontract amount, Hughes' affidavit claimed that the dual capacity of Weese as both owner and architect on the project created uncertainty as to whether Weese's on-site instructed changes were given in his capacity as owner or architect on the project. Furthermore, Hughes stated in substance that representatives of Fulton House, as owner, participated in and affirmed Weese's on-site changes and also issued similar instructions of their own. In short, the reasonable inferences which might be drawn from Premier's complaint, supporting documents, and affidavit, are that the owners knew that the amounts shown on Premier's pay-out notes and lien waivers did not accurately reflect the amounts due it for materials and labor Premier had provided on the project. O'Keefe's affidavit, on behalf of the owners, disputed these allegations in the sense that he stated that the owners innocently relied upon Premier's lien waiver and pay-out note in authorizing Premier's payment.

It is well established that a motion pursuant to section 2—619 cannot be decided on the basis of controverted factual matter; since the issues which the trial court should have considered here were factually disputed by the parties, the court's judgment dismissing count I must be reversed and the cause remanded for further proceedings. In view of this determination, we do not address Premier's additional claims of reversible error in the trial court's dismissal of count I.

## II

### DISMISSAL OF COUNT II

■ Premier argues that the trial court erred in dismissing count II of its amended complaint which sought recovery of $431,045.24, the value of extras Premier claimed it provided, based upon the owners' breach of an oral contract between them and Premier regarding the extras. We agree.

The trial court's order, which struck with prejudice count II of the amended complaint, stated that the count was "inconsistent with prior sworn statements part of the record." As appears from the transcript, the court determined that Premier could not seek relief from the owners based upon breach of an oral contract regarding the extras because Premier's original verified complaint sought recovery of the value of

the disputed extras from Corrigan based upon breach of the written subcontract between Corrigan and Premier.

Premier argues that section 2—605 of the Code (Ill. Rev. Stat. 1981, ch. 110, par. 2—605), regarding verified complaints, permits alternative or inconsistent pleadings where a party is uncertain what the facts and evidence will show. (See, *e.g., Olson v. Weingard* (1966), 77 Ill. App. 2d 274, 222 N.E.2d 24.) It contends that such pleadings are appropriate here because Corrigan's answer to Premier's claim against it has admitted that Premier provided the disputed material and labor but denied that Corrigan requested or authorized the work.

The owners claimed before the trial court and argue now in this appeal that Premier's prior sworn statements were inconsistent because they sought recovery of the value of the extras from Corrigan based upon Premier's electrical subcontract with the general contractor. As evidence of such prior inconsistent sworn statements, owners point to portions of count II of Premier's original verified complaint directed against Corrigan for breach of subcontract; portions of Premier's amended notice and claim for mechanic's lien, attached as an exhibit to Premier's original verified complaint with regard to count I against owners for foreclosure of the lien; portions of Premier's second amended notice and claim for mechanic's lien, attached as an exhibit to Premier's original verified complaint with regard to count I for lien foreclosure; portions of Premier's subcontract; portions of the contractor's affidavit Premier executed on July 13, 1981, which accompanied its lien waiver; and portions of the lien waiver itself. Owners claim that these statements directly contradicted count II of Premier's amended complaint, which alleged in relevant part that the extras were provided "at the express request of the Beneficial Owners, and/or his architect, and/or his architect's field representatives," which created "an oral contract *** between Premier and the Owner to perform said additional work for added consideration."

"Prior inconsistent sworn statements," or judicial admissions, are a party's formal binding statements or allegations of fact. (*Giamanco v. Giamanco* (1982), 111 Ill. App. 3d 1017, 1022, 444 N.E.2d 1090.) Once made, as for example in a verified pleading, a party cannot subsequently contradict such factual allegations. (*Waldorf v. Marlas* (1977), 56 Ill. App. 3d 358, 362, 371 N.E.2d 1021.) The provision in section 2—605 of the Code (Ill. Rev. Stat. 1981, ch. 110, par. 2—605) that verified allegations shall not constitute evidence except by way of admission refers to admissions of fact, not admissions of law. *Franz v. Schneider* (1957), 14 Ill. App. 2d 464, 468, 144 N.E.2d 798.

■ The statements of Premier which the trial court found to con-

stitute binding judicial admissions here were essentially allegations that Premier provided the extras on the basis of its subcontract with Corrigan. These were allegations of legal conclusions, however, not facts. Although the allegation of the existence of a subcontract of a particular scope might appear upon first impression to be an allegation of "fact," it is more properly an allegation of a legal conclusion, since it is the province of the trial court to determine, based upon properly admitted evidence, the existence and terms of a contract between the parties. (See *Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946-47, 428 N.E.2d 1028; *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864, 341 N.E.2d 101.) The construction, interpretation or legal effect of a contract are questions of law to be resolved by the court. (*Premier Electrical Construction Co. v. Ragnar Benson, Inc.* (1982), 111 Ill. App. 3d 855, 864, 444 N.E.2d 726.) Consequently, in our view, count II of Premier's amended complaint did not contain factual allegations inconsistent with its verified complaint; instead, it sought, based upon factual allegations consistent with and constituting an amplification of the verified complaint, a remedy inconsistent with its verified complaint.

Further, there is no error in such a procedure. The doctrine of election of remedies does not apply when inconsistent or alternative remedies are joined in the same pleading. (*Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1005-06, 388 N.E.2d 943.) The remedies of a subcontractor are cumulative and may be pursued consecutively or concurrently. (*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 677, 456 N.E.2d 889.) These remedies include:

> "(1) an action at law against the original contractor alone; (2) an action at law against the original contractor and the owner jointly; (3) an action at law upon the original contractor's completion bond; (4) an action in equity to enforce the subcontractor's lien; and (5) intervention in a pending action of the original contractor against the owner. (Ill. Rev. Stat. 1981, ch. 82, par. 1 *et seq.*; see Illinois Mechanics' Lien 5—54 (Ill. Inst. Cont. Legal Educ. 1981).)" (*J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 677, 456 N.E.2d 889.)

The trial court erroneously determined that since Premier had elected the remedy of recovery from Corrigan for breach of subcontract in its original complaint, it could not seek recovery from the owners based upon breach of an oral contract in its amended complaint. Accordingly, we conclude that count II of Premier's amended complaint was improperly dismissed. In view of this determination, we do not address

additional arguments raised by Premier regarding the trial court's dismissal of this count.

## III

### DENIAL OF LEAVE TO FILE AN UNJUST ENRICHMENT CLAIM

Premier argues that the trial court improperly denied it leave to file count IV of its proposed amended complaint which sought recovery from the owners based upon a theory of unjust enrichment. We disagree.

The theory of unjust enrichment is based upon a finding of a "contract implied in law." Such a contract differs from a "contract implied in fact" in that it arises by implication of law wholly apart from the usual rules relating to contracts and does not depend upon the agreement or consent of the parties. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 690, 461 N.E.2d 1075.) Unjust-enrichment recovery requires a showing that the defendant has voluntarily accepted a benefit which it would be inequitable for him to retain without payment, since the law implies a promise to pay compensation when value of services is knowingly accepted. (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 1017, 415 N.E.2d 492.) As a general rule, the doctrine of unjust enrichment does not apply where the entire work is contracted for and placed under a general contractor who has the power to employ whom he chooses, because in such circumstances the owner has the right to presume that work is being done for and on behalf of the contractor. (*Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142, 145, 255 N.E.2d 615.) This rule applies because a claim for unjust enrichment generally cannot stand where there is an allegation of an express contractual agreement. (See *Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142, 145, 255 N.E.2d 615; see also *Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 288, 456 N.E.2d 267.) Nevertheless, it has also been held that where the general contractor's employment has been terminated prior to completion of the project and the owner has directly instructed the subcontractor to perform such work with the assurance of compensation, the subcontractor may seek recovery directly from the owner. (*Redd v. Woodford County Swine Breeders, Inc.* (1977), 54 Ill. App. 3d 562, 566, 370 N.E.2d 152.) In this instance, however, the proper theory of recovery is breach of an express unilateral contract between the owner and the subcontractor, rather than a theory of unjust enrichment. *Redd v. Woodford County Swine Breeders, Inc.* (1977), 54 Ill. App. 3d 562, 370 N.E.2d 152.

■■■ Count IV of Premier's proposed amended complaint seeking recovery from the owners based upon unjust enrichment alleged, *inter alia*, the existence of an oral contract between Premier and the owners to the effect that Premier would be compensated for the extras it provided. As unjust enrichment cannot be sought where there is such an express agreement, the trial court properly denied Premier leave to file the proposed amended count IV.

## IV

### IMPROPER FORM OF OWNERS' MOTION TO STRIKE OR DISMISS

Based on our review of the record, we find no prejudicial error to Premier resulting from the improper form of the owners' motion to strike or dismiss Premier's amended complaint. We observe, however, that it is abundantly clear from the record that both counsel and the court were confused by this procedure, and would draw owners' counsel's attention to the recent decision of *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360, in this regard.

## V

### OWNERS' CROSS-APPEAL

Because we conclude that the trial court erroneously dismissed count II of the amended complaint, we affirm without discussion the trial court's order denying the owners' motion to tax fees and costs against Premier pursuant to section 2—611 of the Code (Ill. Rev. Stat. 1981, ch. 110, par. 2—611).

For the reasons stated, the trial court's orders dismissing amended counts I and II and denying Premier's motion to vacate these orders are reversed and the cause remanded; the trial court's order denying Premier leave to file an amendment to include a claim for unjust enrichment is affirmed; and the trial court's order denying owners' motion to tax fees and costs is affirmed.

Reversed and remanded in part; affirmed in part.

JOHNSON and JIGANTI, JJ., concur.