*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, of Cook County, Illinois, for Orders of Judgment and Sale of Lands and Lots Upon Which All or Part of the General Real Estate Taxes for the 1996 Tax Year are Delinquent Pursuant to Applicable Sections of the Revenue Act of 1939, as Amended (Forus Mortgage Corporation, Petitioner-Appellee, v. Denis Dwyer *et al.*, Respondents-Appellants).

First District (4th Division)   No. 1—02—3493

Opinion filed February 26, 2004.

Douglas W. Graham, of Chicago, for appellants.

Howard Harris, of Sedona, Arizona, and Benjamin J. Bass, of Bass Law Offices, of Lake Forest, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner, Forus Mortgage Corporation (Forus), filed its petition and application for a tax deed of a single-family residence owned by the respondents, Denis and Lillian Dwyer (individually Denis or Lillian, collectively the Dwyers), based upon their failure to pay general taxes during 1996. Respondent Denis objected to Forus's application for the tax deed on the grounds that Forus violated various statutory provisions of the Property Tax Code (35 ILCS 200/22—5 et seq. (West 2000)) (Code) regarding the proper service and content of notice. The case proceeded to an evidentiary hearing, whereupon the trial court granted Forus's petition to be issued the tax deed. After the trial court entered its final order, Denis filed a document entitled "Post-Trial Motion of Respondent Denis Dwyer." On that same date, Lillian filed a document entitled "Post-Trial Motion of Lillian Dwyer." The trial

court entered separate orders denying each motion, and the respondents appealed. For the reasons that follow, we dismiss the appeal.

On February 13, 1998, the 1996 delinquent real estate taxes of the respondents' single-family residence were sold at a public tax sale. Tax Deed, Inc., purchased the taxes and later assigned its interest to Forus. At that point, therefore, Forus was holder of a tax certificate issued by Cook County memorializing the sale of those delinquent taxes. On August 24, 2000, Forus filed a petition for an order directing the Cook County clerk to issue a tax deed conveying the property to the petitioner unless the respondents made a redemption from the tax sale on the property within the given redemption period. On January 17, 2001, the redemption period expired without any attempt by the respondents to redeem. Accordingly, a number of evidentiary hearings were held regarding Forus's petition for tax deed.

The petition, on its face, identified the case number pertaining to the respondents' property as "00CoTD4670," as indicated by a stamp affixed to the petition. However, immediately above the legible "4670" number is a blacked-out rectangle that appears to cover an entirely different case number. Attached to the petition as its only exhibit is a copy of the tax certificate. As Forus notes, the reverse side of that document is time stamped and contains a rubber stamp showing the "4670" case number. The reverse side of the tax certificate also appears to contain another case number that has been blacked out.

At a January 31, 2001, hearing, Denis appeared *pro se*. When the trial court inquired as to whether Denis was present on behalf of case number "00CoTD4670," Denis advised the court that he had been served with a document with the case number "00CoTD4607," and that he had not received any other notice for any other cases. Forus's counsel responded that the Cook County clerk's office (clerk's office) contacted it on the day it filed its petition and that the clerk's office claimed that it had "misnumbered" the file and told Forus that it should bring back the case file. Denis then asked that the case be dismissed due to the incorrect case number and Forus asked for a continuance. The court ordered the case continued.

On February 16, 2001, Forus filed its "application for an order directing the county clerk to issue a tax deed" (application). Attached to the application, among other things, was an affidavit outlining the process by which service was attempted or obtained on the Dwyers and other persons having an interest in the property, as well as copies of various notices, sheriff's return forms, and other documents. Denis filed a *pro se* appearance on April 10, 2001, and on May 1, 2001, he filed formal objections to the petition in which he stated that he received the wrong notice from the clerk's office and no notice whatsoever from the sheriff.

More than one year later, on July 30, 2002, the trial court *sua sponte* ordered a hearing regarding Denis Dwyer's request for the court to take judicial notice of the docket entries for case numbers 4607 and 4670. In that regard, the court subpoenaed a supervisor of the clerk's office, Perpetua Gauthier, to testify concerning the docket entries, and subpoenaed the relevant docket book itself. An assistant State's Attorney, Brian Grossman, represented the clerk's office and was the first to question Gauthier.

Gauthier testified that the proper procedure for correcting a mistake to the docket book is to put a single line through the mistake, sign one's initials, and proceed to the next entry line. However, clerk's office employees are not instructed to use white correction fluid, as that obscures any mistakes made without being able to reveal what the mistake was. With regard to the number "4670" docket sheet, she noted that an entry dated "9-18-00" reads "P 998375," followed by a second illegible number that appears to have been "whited-out," followed by the numbers 379 and 386 and the word "OK." She testified that entries beginning with the initial "P" indicate certified mailings by the clerk's office and that the letters "OK" mean that the green return receipt cards were signed and returned. If the cards were unclaimed, however, the entry would be "U-N-C-L." She also stated that entries beginning with the letter "Z" indicate a certified mailing by the sheriff's office, but that there are no "Z" numbered entries on the number "4670" docket sheet.

Thereafter, Forus called David May, an employee of the clerk's office, to testify. May asserted that he was the individual who stamped case number 4607 on the documents filed for the case at bar, that the true case number should have read 4670, and that he noticed the mistake later that evening upon reviewing his records. He asserted that on the next day, he went to the sheriff's office after speaking with Forus to insure that the forms with the incorrect numbers were not mailed. While at the sheriff's office, May called Forus's counsel, Benjamin Bass, to inform him that the incorrect notices had not been mailed and that he was changing the copies to correct the numbers. May asserted that after he changed the numbers from "4607" to "4670" by crossing out the mistaken number and inserting the proper number, he returned to the clerk's office to make similar changes.

May conceded that the "take notice" forms left in the file that were not being used by the clerk's office might not have been changed, but to the best of his knowledge, the forms actually mailed had been corrected. May also stated that he could not remember whether he changed the certificate of mailing to show the proper case number, but again claimed that the notices themselves would have had the correct number. Thereafter, the trial court announced its decision.

Initially, while the court allowed the clerk's docket book for both case numbers "4607" and "4670" to be admitted into the record, it attributed little or no probative value to that evidence and noted that evidence is not capable of judicial notice. Further, it found that while an undisputed original of a certificate of mailing (which reflects what documents were mailed and when they were mailed) was not in the file for the court to consider, the three attempts at personal service at different hours of the day were sufficient to satisfy Forus's statutory compliance, and the sheriff's returns showed compliance with the obligation to provide certified mailing of those "take notices." Finally, it found that because May was the closest any party could come to a neutral witness, May's testimony was credible as to his mistake, his becoming aware of it, and making the changes required by hand corrections. The court then granted Forus's application for deed and denied Denis Dwyer's objections.

On August 21, 2002, Denis Dwyer filed documents entitled "Post-Trial Motion Of Respondent Denis Dwyer." On the same date, Lillian, represented by counsel, filed a document entitled "Post-Trial Motion of Respondent Lillian Dwyer." On October 24, 2002, an order was entered denying Denis's motion and a separate order was entered denying Lillian's motion. Both Dwyers filed their notice of appeal on November 19, 2002.

Forus asserts that because the Dwyers did not file a timely notice of appeal, we should dismiss their appeal for want of jurisdiction. Forus notes that the trial court's order for deed, which was a final order disposing of all the issues between the parties, was entered on July 30, 2002. As noted, the Dwyers filed their notice of appeal some 112 days later, invoking Supreme Court Rules 301 and 303 (155 Ill. 2d Rs. 301, 303) (appeal from a final order) as the basis for their appellate jurisdiction. Rule 303(a)(1), however, provides that notice of appeal from final judgments in civil cases must be filed with the clerk of the circuit court within 30 days after entry of final judgment. 155 Ill. 2d R. 303(a)(1). Or, if a timely postjudgment motion directed at the final judgment has been filed, notice of appeal must be filed within 30 days after entry of the order disposing of the last pending postjudgment motion. 155 Ill. 2d R. 303(a)(1). Consequently, barring the existence of a proper postjudgment motion filed within 30 days after the trial court's entry of the order for deed, appellate jurisdiction is lacking.

■ Forus asserts that the trial court "had no basis for receiving or determining the post-trial motions" and, thus, no occasion to toll the 30-day appeal period starting on July 30, 2002. Forus notes that this is a real estate property tax case arising out of the Property Tax Code,

and that all matters pertaining to property tax levies, tax collection, and related matters are purely statutory and are subject to the express provisions of the statute creating authority for the process involved. As such, section 22—45 of the Code provides:

"Tax deeds issued under Section 22—35 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 2—1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under that Section with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2—1401 shall be limited to:

(1) proof that the taxes were paid prior to sale;

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22—20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22—10 through 22—30." 35 ILCS 200/22—45 (West 2000).

In the present case, Forus concedes that while the Dwyers' posttrial motions could be considered motions for reconsideration brought pursuant to section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 2000)), the plain language of Code section 22—45 limits a party to only two avenues for seeking relief from an order for deed: direct appeal or a motion brought under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)). Accordingly, because neither of these procedures involves a motion for reconsideration brought under section 2—1203, Forus asserts that the trial court had no authority to receive or act on either of the Dwyers' posttrial motions. Consistent with this approach is the maxim *expressio unius est exclusio alterius*, *i.e.*, a statute that specifies one exception to a general rule excludes other exceptions by implication. See *Cie v. Comdata Network, Inc.*, 275 Ill. App. 3d 759, 761 (1995). And because the posttrial motions were inappropriate, Forus concludes that they cannot serve to toll the 30-day period after the July 30, 2002, final order for deed.

■ Although respondents do not argue the point, we first remark that our own examination of the issue of whether respondents' posttrial motions could be considered petitions for relief from judgment under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—

1401 (West 1998)) revealed that they could not be construed as such. It is well settled that the function of a section 2—1401 petition is to bring before the trial court facts *dehors* the record which, if known at the time judgment was entered, would have prevented entry of the judgment. *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 457 (2000). Indeed, section 2—1401 cannot be used to again put in issue questions previously adjudicated by valid means. *Southmoor Bank & Trust Co. v. Willis*, 15 Ill. 2d 388, 395 (1958).

■ In the present case, without question, both posttrial motions seek the same relief that was sought at the trial court: dismissal of Forus's cause due to an alleged botched service of process. While saying nothing of respondents' compliance with the other section 2—1401 requirements of providing accompanying affidavits and notice of the motion, we find that because these motions do not seek to introduce new facts to the trial court, they cannot be considered proper section 2—1401 motions. Instead, we think they more closely resemble section 2—1203 motions for reconsideration. Thus, our task then becomes to determine whether a party may contest the issuance of a tax deed by filing a motion under section 2—1203.

As both parties note, the Code section that ostensibly limits parties to only two means of challenging the trial court's order for deed—Code section 22—45—has been found unconstitutional by the Second District for violation of the principle of separation of powers. *In re Application of the County Collector*, 281 Ill. App. 3d 467, 476 (1996) (*Parisi*); *In re Application of the County Treasurer ex officio County Collector*, 292 Ill. App. 3d 310, 312-13 (1997) (following *Parisi*). Before the *Parisi* court reached that conclusion, however, it mapped out the somewhat extensive history of cases dealing with Code section 22—45 which seemingly came to a different conclusion:

> "We note that, although no Illinois case has addressed whether section 22—45 permits a party to file a section 2—1203 motion to contest the issuance of a tax deed, Illinois courts have routinely noted that the issuance of a tax deed is incontestable except by direct appeal or a section 2—1401 petition. See *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 165-66 (1983) ('Under section 266 of the [Revenue] Act [of 1939] [the predecessor section and statute of section 22—45 of the Property Tax Code], tax deeds were incontestable except by direct appeal'); *Smith v. D.R.G., Inc.*, 63 Ill. 2d 31, 36 (1976) (same); *In re Application for Judgment & Sale by the County Treasurer & Ex Officio County Collector*, 276 Ill. App. 3d 1084, 1090 (1995) (stating that language that tax deed was incontestable except by appeal not satisfied where the party did not file an appeal from the order directing the issuance of the tax deed);

*Wilder v. Finnegan*, 267 Ill. App. 3d 422, 424 (1994) ('It is well settled by statute and case law that tax deeds are incontestable except by direct appeal or by a petition for postjudgment relief pursuant to section 2—1401'); *In re Application of the County Treasurer & Ex Officio County Collector*, 171 Ill. App. 3d 644, 648 (1987) ('Absent fraud, tax deeds which are issued are incontestable except on direct appeal'); *Elliott v. Johnson*, 156 Ill. App. 3d 70, 73 (1987) ('a tax deed may be challenged only by direct appeal or by a motion pursuant to section 2—1401')." *Parisi*, 281 Ill. App. 3d at 474-75.

Nevertheless, after noting that an outstanding number of cases have upheld the statute's constitutionality, the *Parisi* court found that Code section 22—45 "essentially prohibited" a trial court from modifying or vacating an order for tax deed, save for "a section 2—1401 petition filed 30 days after the entry of the order." *Parisi*, 281 Ill. App. 3d at 476. The court stated:

"For all practical purposes, section 22—45 divests the trial court of jurisdiction over the matter once it has entered its order, in apparent conflict with the general rule that the trial court retains jurisdiction to vacate or modify its own orders for 30 days after it has [*sic*] been entered." *Parisi*, 281 Ill. App. 3d at 476.

Consequently, the *Parisi* court reasoned, the question then became whether the legislature has the authority to strip a trial court of jurisdiction once it has ordered the county clerk to issue a tax deed, *i.e.*, whether Code section 22—45 violates the principle of separation of powers. *Parisi*, 281 Ill. App. 3d at 476.

Ultimately, the *Parisi* court found that because Code section 22—45 "provides that the only direct attack on a trial court's order directing the county clerk to issue a tax deed is by appeal to a reviewing court" (*Parisi*, 281 Ill. App. 3d at 478), section 22—45 has entirely divested the trial court of the jurisdiction which Supreme Court Rule 303(a)(1) imparts to it for "30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1). Moreover, the *Parisi* court found that section 22—45 "unduly infringes on the inherent power of the judiciary" (*Parisi*, 281 Ill. App. 3d at 478) to reconsider and correct its own orders for 30 days after their entry:

"Just as the power to render an order is one of the most important inherent judicial powers of the courts [citation], so too is the power to correct that order within 30 days. To hold otherwise would be to accept the absurd proposition that trial courts are powerless to correct their orders, even when it is patently obvious that such orders were improperly entered." *Parisi*, 281 Ill. App. 3d at 479.

Accordingly, as noted, the court concluded that Code section 22—45

violated the doctrine of separation of powers and was thereby unconstitutional. *Parisi*, 281 Ill. App. 3d at 479. Noting that a decision by one district of the appellate court is not binding upon other districts (*Knapp v. Palos Community Hospital*, 176 Ill. App. 3d 1012, 1018 (1988)), we respectfully disagree.

■ We first remark that statutes carry a strong presumption of constitutionality and that we have a duty to uphold the constitutionality of a statute whenever reasonably possible. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003). By way of background, we note that prior to the legislature's amendment of the Revenue Act of 1939 (Ill. Rev. Stat. 1953, ch. 120, par. 747), the statutes governing tax deeds assigned the county clerk the task of administratively determining the factual matters regarding the substantive rights of parties after a tax sale, *i.e.*, the expiration of the period of redemption and the giving of statutory notices. *Cherin v. R. & C. Co.*, 11 Ill. 2d 447, 451-52 (1957). The clerk made his determination from affidavits on file in his office, and then issued tax deeds as the completion of the annual tax sale involved. *Cherin*, 11 Ill. 2d at 452, citing 1933 Ill. Laws 923; *People v. Altman*, 9 Ill. 2d 277 (1956). Because the clerk's findings were not a judicial determination of facts, the supreme court required strict observance of form:

> "No defect or omission in the affidavit filed with the clerk could be supplied, regardless of what the real facts might have been. (*Esker v. Heffernan*, 159 Ill. 38, 45; *Gage v. Mayer*, 117 Ill. 632, 638.) It was beyond the power of the court to determine from the evidence upon hearing whether the statutory conditions precedent had been met. (*Lawton v. Sweitzer*, 354 Ill. 620, 630.)" *Cherin*, 11 Ill. 2d at 452.

As the *Cherin* court noted, "[s]uch exacting, technical procedure resulted in numerous defective titles and time-consuming litigation, and served to encumber rather than free land to once again enter the stream of commerce and bear its aliquot share of the tax burden." *Cherin*, 11 Ill. 2d at 452.

Following the Depression in 1929, tax delinquencies were so great that revenue for essential governmental functions was in jeopardy. "In part this was due to the vulnerability of tax deeds, which, in the words of one commentator, amounted to little more than a cloud on the title of the delinquent owner. (Turano, *Equitable Relief, Collateral Attack and the Illinois Tax Deed*, 51 Chi.-Kent L. Rev. 725 (1975)." *In re Application of the County Treasurer*, 92 Ill. 2d 400, 406 (1982). As *Cherin* related, the legislature needed to take decisive action:

> "In 1933 the General Assembly amended the Revenue Act of 1872 by adding sections 253a, 253b, and 253c (Smith-Hurd Stat. 1933,

chap. 120, pars. 238a, 238b and 238c) to provide a more drastic method of tax foreclosure. The right of redemption from such sale was governed by section 253. (Smith-Hurd Stat. 1933, chap. 120, par. 238.) In *Clark v. Zaleski*, 253 Ill. 63, decided in 1912, the procedure of filing petition in the tax foreclosure proceeding for supplemental decree for the issuance of a tax deed was approved, proof of requisite notice by affidavit discontinued, judicial determination of statutory compliance ordained, collateral attack thereof barred, except for lack of jurisdiction, and greater stability of title established. (*People v. Altman*, 9 Ill. 2d 277; *Allen v. Nettleton*, 6 Ill. 2d 141; *Nichols, Illinois Civil Practice*, vol. 7, sections 7479—7508 incl.) The legislature was mindful of these facts, of the decisions of this court and of the improved procedure in tax foreclosure proceedings when it amended the Revenue Act in 1951. It then assimilated the procedure with respect to the issuance of deeds following annual tax sales to that used in tax foreclosure proceedings by requiring that the right to the issuance of a deed be determined by the county court instead of by the ministerial act of the county clerk and determined that: 'Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the county court directing the county clerk to issue the tax deed.' Ill. Rev. Stat. 1955, chap. 120, par. 747." *Cherin*, 11 Ill. 2d at 452-53.

In other words, in order to provide greater stability for tax deeds and to give the entire tax deed process more teeth, the legislature empowered the circuit court with the ability to determine statutory compliance with the Revenue Act. And, in furtherance of its intent to provide stability, it limited the number of avenues litigants could take to bring collateral attacks upon orders issued for tax deed.

Some 50 years later, however, the *Parisi* court found that because the circuit court's jurisdiction over this matter is derived from the jurisdiction conferred upon it by the constitution, as recognized in Supreme Court Rule 303(a)(1), the legislature's restriction on the types of posttrial motions that litigants may bring conflicted with Supreme Court Rule 303(a)(1) and excessively encroached upon the trial court's inherent power to review its own orders.

■ In addressing the first issue of whether Code section 22—45 somehow unconstitutionally abridges the jurisdiction conferred upon trial courts by Supreme Court Rule 303(a)(1), we, unlike *Parisi*, find no incongruity. Rule 303(a)(1) states:

"Except as provided in paragraph (b) below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in

a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1).

The *Parisi* court interpreted Rule 303 and Code section 22—45 and found that while Rule 303(a)(1) states that the trial court retains jurisdiction over a case for only 30 days after the entry of judgment, unless a posttrial motion directed against the judgment is filed, Code section 22—45 eliminates this 30-day time frame and the court loses jurisdiction immediately. *Parisi*, 281 Ill. App. 3d at 477-78. *Parisi* then held that because Code section 22—45 effectively divests the trial court of its jurisdiction over the matter once it has entered its order, it conflicts with Rule 303(a)(1). We disagree.

We discern no conflict, implied or direct, between Rule 303(a)(1) and Code section 22—45. Rule 303(a)(1) requires a party to file its appeal or any posttrial motions it may have with the circuit court within 30 days of that court's issuance of a final order or within 30 days of the last pending posttrial motion. However, nothing in the rule states that further restrictions may not be placed upon litigants when filing their posttrial motions. Further, the rule does not define a "posttrial motion directed at the judgment," nor does it grant the parties a right to file such a motion. See *Parisi*, 281 Ill. App. 3d at 477 ("[a]dmittedly, Rule 303(a)(1) does not expressly state that a party has the right to file a post-trial motion within 30 days after the entry of the final judgment"). Code section 22—45 simply serves to control a litigant's options for filing a posttrial motion following the order for issuance of a tax deed. However, it mandates no action on the part of the circuit court and, therefore, is not a direct legislative regulation of court procedure. See *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 48 (2001). Accordingly, where Code section 22—45 regulates the litigants, which is not prohibited by Rule 303(a)(1), and says nothing regarding abridgement of the trial court's jurisdiction, we simply cannot find a conflict with Rule 303(a)(1).

Additionally, we are troubled by the Second District's finding that Code section 22—45 provides *no* practical safety valves for the circuit court to correct an impropriety in its order. While we agree that Code section 22—45 limits a litigant's options in filing posttrial motions for a court to review a decision ordering issuance of a tax deed, the legislature has not eliminated those options altogether. Such a finding would gloss over the importance of a party's access, albeit limited access, to relief based upon a section 2—1401 motion and would render the legislature's language regarding section 2—1401 relief mere surplusage. See *Advincula v. United Blood Services*, 176 Ill. 2d 1, 26 (1996) (the presence of surplusage should not be presumed in statu-

tory construction and each word, clause or sentence must, if possible, be given some reasonable meaning), quoting *Hirschfield v. Barrett*, 40 Ill. 2d 224, 230 (1968). Accordingly, any perceived total divestment of the trial court's general jurisdiction does not, in fact, exist.

Thereafter, we must determine whether Code section 22—45 infringes upon one of the judiciary's inherent powers. We do not quarrel with *Parisi* insofar that it holds that the legislature may not unduly encroach upon the inherent powers of the judiciary. However, we disagree that a court's power to review its orders is an inherent power that cannot be *shared* under any circumstances. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411 (1997) ("[t]he separation of powers clause is not contravened merely because separate spheres of governmental authority may overlap"); *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997) ("[t]he separation of powers provision does not seek to achieve a complete divorce between the branches of government; the purpose of the provision is to prevent the whole power of two or more branches from residing in the same hands. [Citation.] There are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared"). See also *Burger*, 198 Ill. 2d at 33 (following *Kunkel* and *Best*). Indeed, *Parisi* supplied no authority for that proposition (*Parisi*, 281 Ill. App. 3d at 479), and the only other case on record in Illinois that could appear to arrive to that conclusion is reliant upon case law which holds to the contrary.

In *Board of Managers of Dunbar Lakes Condominium Ass'n II v. Beringer*, 94 Ill. App. 3d 442 (1981), this court stated:

"A trial court is without jurisdiction to vacate an order more than 30 days after it comes final and appealable (*Lurie Co. v. Teichner* (1978), 63 Ill. App. 3d 950, 380 N.E.2d 959; *Danaher v. Knightsbridge Co.* (1978), 56 Ill. App. 3d 977, 372 N.E.2d 862); however, it retains the inherent power to review an order before it becomes final or within 30 days thereafter (*Waldorf v. Marlas* (1977), 56 Ill. App. 3d 358, 371 N.E.2d 1021)." *Beringer*, 94 Ill. App. 3d at 446.

In turn, the *Waldorf* court stated: " 'Trial courts have the power to review orders made by them until final adjudication ***.' *James C. Wilborn & Sons, Inc. v. Heniff* (1965), 56 Ill. App. 2d 217, 223, 205 N.E.2d 771, 775." *Waldorf*, 56 Ill. App. 3d at 362. However, the *Waldorf* court failed to quote all of the relevant language in *Heniff*: "Trial courts have the power to review orders made by them until final adjudication, *except as otherwise provided by statute*." (Emphasis added.) *Heniff*, 56 Ill. 2d at 223. Quite simply, we read this language to state that the legislature retains at least *some* power to limit the judiciary's ability to review its own orders.

At first glance, our holding today may appear to condone an

improper exercise of judicial power by the legislature in violation of the separation of powers doctrine, where judicial power has been found to include " ' "all powers necessary for complete performance of the judicial functions." ' [Citations.]" *Parisi*, 281 Ill. App. 3d at 476. However, we find that the legislative restrictions upon a litigant's ability to bring a posttrial motion after an order for issuance of a tax deed do not unconstitutionally abridge a circuit court's ability to review its own orders. "Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature has created a 'justiciable matter.' " *In re M.M.*, 156 Ill. 2d 53, 65 (1993), quoting *Skilling v. Skilling*, 104 Ill. App. 3d 213, 219 (1982). And, in instances such as the present where the legislature actually invested the circuit court with the power to determine cases where a petition for tax deed had been filed (see *Cherin*, 11 Ill. 2d at 452-53), it is only by reason of the statute that that justiciable matter exists at all. It is well established that courts exercising jurisdiction in such matters must proceed within the guidelines of the statute. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985). Here, in other words, the trial court should have enforced the legislative restrictions placed upon the Dwyers as to the types of posttrial motions they were able to file instead of assuming it had the jurisdiction to hear the Dwyers' *de facto* section 2—1203 motions.

■ Ultimately, because we find that Code section 22—45 is constitutional, its restrictions on litigants remain viable. As such, trial courts granting orders for the issuance of a tax deed may only hear posttrial motions brought pursuant to section 2—1401 premised upon four, distinct grounds for relief. Conversely, any other motions brought thereto or brought under any other grounds are improper and cannot operate to toll the 30-day statute of limitations for filing a timely notice of appeal, as stated in Supreme Court Rule 303(a)(2). 155 Ill. 2d R. 303(a)(2) (to qualify as a proper posttrial motion, the motion must request one of the statutorily authorized types of relief).

In the case at bar, as noted, the trial court entered its order for deed on July 30, 2002. The Dwyers each filed presumably what amounted to posttrial motions for reconsideration pursuant to section 2—1203 on August 21, 2002. However, because those motions failed to specifically request one or more of the statutorily authorized types of relief for a posttrial motion under section 22—45, they were not "posttrial motions" that would extend the time for filing their notices of appeal. See *In re Estate of Goodlett*, 225 Ill. App. 3d 581, 586 (1992). Ultimately, because respondents filed their notice of appeal on November 19, 2002, well beyond 30 days after entry of the trial court's

final order, we have no choice but to dismiss their appeal for failing to comply with Supreme Court Rule 303(a)(1).

Appeal dismissed.

HARTMAN and THEIS, JJ., concur.