JOYCE LUMBER COMPANY, Plaintiff, Appellant, v. MARSHALL-TOWN CONSTRUCTION LEAGUE et al., Defendants, Appellants, OTTO GERSDORF, etc., et al., Cross-Petitioners, Appellees, JOHN HODGSON et al., Cross-Petitioners, Cross-Appellants.

No. 44511.

FEBRUARY 14, 1939.

E. N. Farber and R. A. Rockhill, for appellant.

Ray P. Scott, for cross-appellants.

Boardman & Cartwright, F. E. Northup, M. C. Farber, O. H. Allbee, W. T. Bennett, Clive Matthews, T. E. Adams, E. E. Bachman, and G. A. Mote, for appellees.

OLIVER, J.—Early in 1935, certain building contractors, subcontractors and craftsmen of Marshalltown, Iowa, formed among themselves an unincorporated association known as Marshalltown Construction League. Several months later this voluntary organization was changed into a corporation not for pecuniary profit and to effectuate said corporate organization, articles of incorporation were executed by some or all of the members of said voluntary organization on April 15, 1935. However, Marshalltown Construction League did not actually come into existence as a corporation until May 25, 1935, the date of the filing of the articles of incorporation. At this point we will say that in view of our holding in this case it is immaterial

whether this organization be treated as a copartnerhsip, joint adventure, or corporation. Therefore, in this opinion, we will not differentiate between these organizations and will refer to them as though one organization had existed continuously during the times referred to herein.

The objects and purposes of Marshalltown Construction League appear more clearly from the articles of incorporation than from the lips of the witnesses. These articles recite that the organization is an association of business men of the city for the promotion of the interests of those engaged in the building trades and industry and business incident thereto; for the encouragement and maintenance of friendly and amicable relationship between each other and their customers and employees; for the establishment and maintenance of higher standards of integrity, workmanship and efficiency; for the promotion and stimulation of the building trades and industry and business incident thereto by advertising and other means; and finally for the building of exhibits, buildings and model homes and the advertising, sale and disposition thereof, with a view toward attracting attention to advertising and stimulating the business of the building trades and industry, and the businesses incident thereto in said city. Contractors, subcontractors, craftsmen, architects and their employees, manufacturers, dealers, materialmen and tradesmen handling building material, appliances or equipment, and other persons in businesses related to the building industry were eligible for membership.

The immediate object of this organization appears to have been the construction and disposition of a house in said city to be known as Model Home. To this end a committee was appointed, headed by the defendant, Archer H. Walton, who was by occupation a building contractor and who largely took over, managed and superintended the erection of said Model Home, customarily designating himself in such connection as Archer H. Walton, Trustee.

Defendants A. F. Estel and wife were the owners of the lot upon which the Model Home was subsequently erected, and on February 21, 1935, entered into a written contract with defendant, Marshalltown Construction League, for the sale of said lot for the sum of $600, of which $1 was paid at said time, and the balance of $599 was to be paid on or before December 31, 1935, at which time abstract was to be furnished and deed de-

livered. The contract contemplated the building of a dwelling house on the lot and it may be said that the Estels were cognizant of the plan to build the Model Home thereon, and to pay for the lot out of the proceeds from the sale of the real estate after the improvement was completed.

Apparently the construction and sale of the Model Home was regarded by Marshalltown Construction League and others as a civic enterprise rather than as one for profit, the thought being that it would advertise the building business and thereby stimulate interest in and benefit said industry, and the various associated and allied businesses in the city. To that end arrangements were made with the radio broadcasting station for certain free broadcasts and advertising for the benefit of materialmen, laborers and contractors, and it was planned to place placards in and about the premises advertising the various individuals and institutions who furnished labor, materials and equipment for said Model Home. Various donations of money, labor and materials were secured from these and other parties. It was planned to defray the balance of the expenses of purchasing the lot and building the house by the sale of tickets to a public dance, at which it was proposed that the property should be given to some ticket holder. As will be hereafter noted, this plan was not carried out. Therefore, the question of its legality is not material to a decision herein. In accordance with said plan a large number of tickets were printed for sale at $1 each, upon each of which was printed a recitation that the holder was entitled to admission to the dance, and to participate in the drawing for the Model Home. Various members of Marshalltown Construction League, certain laborers, materialmen, and others interested in the Model Home, other residents of Marshalltown, and the Chamber of Commerce of said city were furnished said tickets for sale at various dates between April 26, and October 10, 1935. However, said sale was not successful and only a relatively small amount was realized therefrom.

In the meantime meetings were had with various contractors, materialmen and tradesmen, at which arrangements were made to procure the labor and material for said Model Home. Building operations were apparently started early in May, and continued until late in November 1935, when the house was about 80% complete. Nothing further appears to have been done during the winter of 1935-1936, apparently due to inabil-

ity to finance the proposition and during said time considerable damage was done to the unfinished building by the action of the elements. On March 9, 1936, the appellant, Joyce Lumber Company, which had furnished approximately one half of the lumber and certain other building material used in said house, amounting to $1,348.76, filed a claim for mechanic's lien for said amount against the real estate in question, the Estels and Marshalltown Construction League, and on the same date instituted in the district court. of said county an action against said parties, together with individual members of Marshalltown Construction League and other contractors, laborers and materialmen, for the foreclosure of said mechanic's lien. Subsequently, mechanics' liens and various cross-petitions were filed by other materialmen and laborers, some of said cross-petitions being based upon mechanics' liens and some upon open accounts. Certain of the parties also asked for the appointment of a receiver to handle and dispose of said Model Home and the proceeds therefrom, under orders of court. Before the issues in said case were finally made up, a total of 35 petitions, cross-petitions, answers and replies had been filed in said case, but the questions thereby raised for consideration, so far as material to this appeal, were not numerous.

It was not seriously disputed that the various items of labor and material were furnished by plaintiff and the respective cross-petitioners. However, it was pleaded and contended that the construction of said Model Home was in the nature of a joint adventure; that it was to be financed by donations and the disposition of the property; that it was mutually understood that if the amount received from said property in addition to the various contributions was not sufficient to cover the expense, the respective creditors, except the Estels, were to prorate their claims so that each would share pro rata in such proceeds; that the various parties knew and understood and were bound by the terms and conditions under which the labor and materials were to be furnished, and how and when payments were to be made, and that plaintiff and claimant cross-petitioners should not in equity be entitled to enforce mechanics' liens and thereby secure priority over other creditors who had furnished labor and materials, and that said matters estopped them from so doing.

Upon trial of said cause the court found, ordered and decreed that, with the exception of the defendants, Estel, there

was a mutual understanding and agreement among all the parties that their accounts were not to be paid until the disposition of Model Home; that any profit realized was to be used as an advertising fund to promote building in Marshalltown; that in case of a loss the parties were to prorate their claims so that each would share pro rata in the proceeds; that whether or not plaintiff was a party to such agreement it knew of such agreement and understanding and was, therefore, bound by the same terms as the remaining contractors, artisans and materialmen; that plaintiff took part in meetings at which were discussed and adopted plans and methods for building and financing said property and that plaintiff acquiesced therein and should not in equity and good conscience be entitled to a mechanic's lien prior and superior to the claims of the remaining contractors or subcontractors. The court further found that it would be inequitable and unconscionable to permit any of the claimants to have any advantage, one over the other, in the establishment of their claims and that plaintiff and the cross-petitioning claimants were estopped from having or claiming a mechanic's lien, or any priority or preference, one over the other, and that the relief asked by plaintiff and the other claimants should be denied excepting to the extent that the claims of the respective parties were established and allowed upon a pro rata basis.

The court further found that the Estels were entitled to a vendor's lien superior to the claims of the other parties for the balance due for the purchase price of the lot.

A receiver was appointed to take charge of and sell the Model Home, and was ordered, after paying various costs and expenses, to use the funds remaining in his hands to pay, first, the claim of the Estels in full, and thereafter to prorate the balance between the mechanics' liens and claims of the plaintiff, cross-petitioners and various claimants, as allowed by the court, or as thereafter allowed by the receiver.

Judgment was entered accordingly and from said judgment the plaintiff, Joyce Lumber Company, and the cross-petitioners, John Hodgson and Louis Stehn, have appealed.

It may be noted that since the entry of said judgment the receiver has disposed of said real estate for $2,725, and under stipulation of all the parties, except the Estels, is holding the proceeds subject to further orders of court.

The principal questions to be settled upon appeal concern

the disallowance of the mechanics' liens and priorities of the appellants, and the allowance to the Estels of a vendor's lien prior to all other claims.

A mechanic's lien is a statutory right given to a contractor furnishing labor and material to protect himself against loss. He may, by contract or by his actions, expressly or impliedly waive that right or be estopped from asserting it. While proof of express or implied waiver must be clear and satisfactory, this court has held that since the case is in equity the rights of a claimant must be governed by equitable principles. Fullerton Lbr. Co. v. Miller, 217 Iowa 630, 252 N. W. 760; Eclipse Lbr. Co. v. Bitler, 213 Iowa 1313, 241 N. W. 696.

These principles suggest themselves in view of the controversy as to whether or not the alleged express and implied agreements of the various contractors created a joint adventure for the building of Model Home. The decision of the trial court was based upon the agreements, understanding and actions of the various parties, taking into consideration the knowledge of each as to the agreements and understanding of the others and the general equitable principles involved. We think this was the correct method of approach and that it is unnecessary to determine whether the transaction should be catalogued as a joint adventure or given some other name.

One of the principal questions in controversy concerns the rights of appellant, Joyce Lumber Company. There is a sharp conflict in the evidence as to the conditions under which appellant agreed to furnish material for Model Home. It is agreed that Mr. McManigal, manager of Joyce Lumber Company, participated with other material dealers in meetings with representatives of Marshalltown Construction League at which these matters were discussed. It is agreed that a Mr. Glick acted as spokesman for all the material dealers who were present at one of these gatherings and that Mr. Glick suggested that the material be sold and billed out at the regular retail price. Certain witnesses for appellees testified that Mr. Glick then made the statement that if there was a loss on the project they would have to prorate the loss. According to these witnesses there was no dissent from this statement and one witness testified that Mr. McManigal nodded in assent. Mr. McManigal and another witness denied that Mr. Glick made any statement about prorating losses.

One of the witnesses who testified as to the statement by Mr. Glick was Fred J. Buchwald, who had operated Buchwald Lumber Company, which furnished approximately the same amount of material as appellant. Mr. Buchwald also testified that Mr. McManigal and he attended the same meetings concerning Model Home at which there were general discussions of the plans for financing and disposing of it, and of the general benefits which would accrue to the community and the particular benefits to the dealers, from the publicity given to the project and the advertising of the individual dealers.

Mr. McManigal testified that, after considering the proposition he agreed to cooperate and to furnish material at regular retail prices. It appears that Mr. McManigal knew that the principal purpose of building Model Home was to promote the building trade for the benefit of contractors and materialmen as had been done in other cities; that he understood and agreed to the plan to pay for the material and labor out of the proceeds from the disposition of Model Home; that he made a donation on behalf of Joyce Lumber Company, that he participated in the sale of tickets, and in the meetings above mentioned. Without discussing the evidence in further detail we will say that the decree of the district court denying appellant the right to preference by mechanic's lien, finds ample support in the record.

Likewise the record shows that cross-appellant, Louis Stehn, was told how the house was to be built and how it was to be financed. Mr. Stehn himself so testified. He furnished certain labor knowing that payment of his bill and the bills of other contractors was contingent both as to amount and time, upon the disposition of the house. He did not dissent from this plan and must be deemed to have performed his contract upon such basis. He must be presumed to have known that other contractors relying upon the same understanding and agreement would not promptly claim mechanic's lien rights. It would be inequitable to permit him to establish such rights to their detriment. Therefore, no error appears in the ruling of the court which denied him a preference over other contractors and ordered payment to be made him upon the basis of his implied agreement.

However, there is no showing of any such stipulation or understanding in the agreement with cross-appellant, Hodgson. It appears that he sold some tickets before he did any work.

However, the only information about the financing, shown to have been given him, was subsequent to the time he agreed to do the work and after his contract was partially performed. Thus it appears that he should not equitably be denied a prior lien upon the fund in the hands of the receiver.

■ The lot upon which Model Home was built was purchased under contract from appellees, Mr. and Mrs. Estel. As vendors they are entitled to a lien for the unpaid balance of the purchase price. But the property was purchased for the known purpose of constructing a dwelling house thereon and the Estels consented to such improvement. Therefore, such vendor's lien would be inferior to the lien rights of cross-appellant, Hodgson. Murray v. Kelroy, 223 Iowa 1331, 275 N. W. 21; Consumers' Ind. Lbr. Co. v. Rozema, 212 Iowa 696, 237 N. W. 433; Kimball Bros. Co. v. Fehleisen, 184 Iowa 1109, 169 N. W. 445; Veale Lbr. Co. v. Brown, 197 Iowa 240, 195 N. W. 248. However, there was no contention that the Estels were parties to the understanding relative to financing the building of Model Home or the prorating of any loss therein, and their vendor's lien would, therefore, be superior to the claims of the other parties herein.

The district court properly appointed a receiver in the premises and provisions of the decree relative to the handling of the receivership affairs were equitable and proper.

The motion to strike the brief and argument of the appellees, Marshalltown Construction League et al., is overruled.

The ruling judgment and decree of the district court is affirmed in all respects except that the claim of cross-appellant, John Hodgson is established as a lien upon the funds in the hands of the receiver, prior and superior to the claims of all other parties to the action, including the vendor's lien of the Estels, said vendor's lien to remain superior to the claims of the other parties to this action. The case is remanded to the district court for decree in accordance with this opinion.—Modified and affirmed.

CHIEF JUSTICE and all JUSTICES concur.