108

LYONS FEDERAL TRUST & SAVINGS BANK, f/k/a Lyons Savings & Loan Association, k/n/a Lyons Savings, Plaintiff-Appellee, v. MOLINE NATIONAL BANK *et al.*, Defendants-Appellees (George D. Guritz *et al.*, Counterplaintiffs and Counterdefendants-Appellees; Robert J. Wolfe, d/b/a Action Plumbing, Counterdefendant and Counterplaintiff-Appellant).

Third District   Nos. 3—89—0066, 3—89—0136 cons.

Opinion filed January 10, 1990.—Rehearing denied February 14, 1990.

Robert R. Ruud, of Sandholm, Alvine & Ruud, of Moline, and Abramson & Fox, of Chicago (Thomas L. Brejcha, Jr., and David G. Duggan, of counsel), for George D. Guritz, Gerald W. Huge, and Paul B. Murray.

Bozeman, Neighbour, Patton & Noe, of Moline (Jack L. Brooks, of counsel), for Robert J. Wolfe.

Dennis R. Fox and Thomas Harper, both of Califf, Harper, Fox, Dailey & Slover, of Moline, and William Swindal and James E. McParland, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Lyons Federal Trust & Savings Bank.

JUSTICE SCOTT delivered the opinion of the court:

Two separate appeals from the circuit court of Rock Island County have been consolidated for review. Both appeals involve the same parties and operative facts; however, the primary issues raised in each appeal are distinct.

A mortgage foreclosure action was brought in Rock Island County by Lyons Federal Trust & Savings Bank (Lyons) principally against George Guritz, Gerald Huge, Paul Murray and John Stevenson (Stevenson), d/b/a GHMS Real Estate Partnership (GHMS), as the beneficial owners of a land trust, wherein Lyons supplied financing for GHMS to build an apartment complex commonly known as Pebble Creek. Stevenson was subsequently determined bankrupt and dismissed as a defendant. Robert J. Wolfe, d/b/a Action Plumbing (Wolf), was included as a defendant in the action because of various electrical and plumbing services provided by Wolfe at Pebble Creek resulting in Wolfe recording a mechanic's lien against the property. Wolfe then filed an intervening claim against GHMS and Lyons to foreclose on the mechanic's lien and additionally filed a counterclaim against GHMS for alleged breach of oral contract to perform work at Pebble Creek. After a bench trial on Wolfe's mechanic's lien and breach of contract claims and hearing post-trial motions, the circuit court by order dated February 16, 1989, entered a judgment of $107,104.71 against GHMS on Wolfe's breach of contract claim and denied judgment of Wolfe's mechanic's lien foreclosure based on Wolfe's failure to give notice of the lien to Lyons as required by section 24 of the Mechanics' Liens Act (Ill. Rev. Stat. 1987, ch. 82, par. 24). One appeal was initiated by GHMS, arguing the trial court erred in finding in favor of Wolfe on the breach of contract claim and, alternatively, that the award of damages was excessive. The second appeal was instituted by Wolfe based on the circuit court's denial of its mechanic's lien foreclosure action.

Lyons mortgage on Pebble Creek was recorded November 19, 1982. Wolfe's mechanic's lien was filed on February 23, 1984, and alleged that "on or about April 29, 1983, *** [Wolfe] *** made an oral contract with John Stevenson," a former partner of GHMS. In Wolfe's verified claim to foreclose on the mechanic's lien, Wolfe first alleged that the oral contract inception date was April 29, 1983, and

engaged Wolfe to do a variety of electrical and plumbing work on a "time and material basis." Wolfe claimed to have completed the work on December 23, 1983, and a balance of $107,161.75 was owed under the contract. Wolfe was subsequently granted leave to amend the counterclaim and changed the alleged inception date of the oral agreement to August 23, 1982, rather than April 29, 1983. In its answer to the amended pleadings, GHMS admitted the existence of an oral agreement on August 23, 1982, but denied the terms encompassed all that Wolfe alleged and GHMS affirmatively alleged that all work performed under the August 23, 1982, contract had been paid for in full.

Only two witnesses testified at trial, Robert Wolfe and John Stevenson. The evidence centered primarily around the date and scope of the agreement entered into between Wolfe and Stevenson on August 23, 1982, the amount due Wolfe by Stevenson for work performed at Pebble Creek and the billing and payment practices of Wolfe and Stevenson.

### GHMS APPEAL

The appeal of GHMS centers on the oral contract between Wolfe and Stevenson, as agent for GHMS. GHMS essentially claims that there were multiple contracts entered into between Wolfe and Stevenson, some of which were paid in full, and on others, partial payments were made. GHMS further claims that Wolfe was paid in full for the contract entered into on August 23, 1983, and therefore, GHMS was entitled to judgment for the contract entered into on that date. Wolfe, on the other hand, disagrees there was a succession of contracts and claims the terms of the contract entered into on August 23, 1982, were the cornerstone for all work performed by Wolfe at Pebble Creek. Wolfe alleged the August 23, 1982, contract set hourly rates for skilled and unskilled labor, set hourly rates for the use of certain equipment, and provided that Wolfe would do whatever Stevenson said to do on a time and material basis. The circuit court determined an oral contract existed.

GHMS makes two arguments as to why the circuit court erred in granting judgment in favor of Wolfe on the oral contract claim. First, GHMS argues that Wolfe's sworn statement of mechanic's lien and verified countercomplaint alleging the April 29, 1983, contract date are judicial admissions denying judgment as a matter of law or, alternatively, are serious inconsistencies rendering Mr. Wolfe's testimony unbelievable and therefore against the manifest weight of the evidence. GHMS avers that Wolfe's change of the contract date was

done solely for the purpose of obtaining priority over mortgagee Lyons. Curiously, however, GHMS never objected to Wolfe's amendment alleging August 23, 1982, as the contract date, and in fact, admitted that a contract was entered into between the parties on that date but denied the scope of the contract covered all work done by Wolfe on the Pebble Creek project. Thus, GHMS argues that since the evidence shows there were a series of contracts entered into between the parties and the contract dated August 23, 1982, was paid in full, judgment must be entered against Wolfe and in favor of GHMS. We disagree.

■ Undeniably, Wolfe's statement of mechanic's lien did state that the contract date was April 29, 1983. Nonetheless, Wolfe sought leave and was allowed, without objection, to amend the pleadings and allege a contract date of August 23, 1982. We disagree with GHMS' contention that the date alleged in the statement of mechanic's lien constituted a binding judicial admission, since a statement of mechanic's lien does not necessarily require a contract date to be alleged (see Ill. Rev. Stat. 1987, ch. 82, par. 7), nor is the lien statement necessary for Wolfe's contract claim. We consider the variance in the two alleged contract dates amounts to adverse evidence entitled to little consideration since there was no showing that GHMS in any way relied on the verified claim for lien to its detriment. See *Office Electronics, Inc. v. Grafic Forms, Inc.* (1979), 72 Ill. App. 3d 456, 390 N.E.2d 953 (principle of estoppel applied to inconsistent original and amended pleadings); *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547 (an amended, abandoned or withdrawn original pleading is treated as an ordinary admission); *Nolan v. American Telephone & Telegraph Co.* (1945), 326 Ill. App. 328, 61 N.E.2d 876 (inconsistent statement in an abandoned pleading is adverse evidence, but not a conclusive judicial admission).

■■ ■ The trial court's finding that the contract was entered into on August 23, 1982, is supported by the following evidence: that the only time labor and machinery hourly rates were discussed was pursuant to the August 23, 1982, contract; that the contract was not based on a bid of a job but was for time and material; and that all of the work was performed on the same general project. It is also not fatal that no specific amount of work or the length of Wolfe's employment at Pebble Creek were not expressly defined by the terms of the contract. Employment contracts with no definite termination date will exist so long as it is mutually satisfactory between the parties, with the understanding that either party may terminate the contract at will. (*Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App.

3d 787, 482 N.E.2d 377; *Schoen v. Caterpillar Tractor Co.* (1968), 103 Ill. App. 2d 197, 243 N.E.2d 31.) It is simply unbelievable that multiple contracts were entered into each time Wolfe performed work at the request of Stevenson at the Pebble Creek project.

■ GHMS next contends the damages awarded Wolfe by the trial court are against the manifest weight of the evidence. GHMS first argues that Wolfe's execution of final lien waivers either bars his claim for payment after October 3, 1984, or seriously calls to question the truthfulness of those claims for payment. GHMS additionally claims that Wolfe's purported method of using nonsequenced invoices infers that the invoices were fabricated. We disagree with these contentions. The trial court had before it all invoices, lien waivers, payments and supporting testimony in determining the amount owed under the contract. Our review of this evidence supports our belief that the evidence substantiates the circuit court's finding. The execution of lien waivers does not bar any claim for additional payments, because the evidence supports the circuit court's findings that these waivers were necessarily executed by Wolfe in order to receive partial payment and were intended to be partial lien waivers as to particular work. Moreover, the existence of lien waivers only bars the right to assert a lien under the Mechanics' Liens Act, but it does not operate to extinguish the underlying obligation. (*Capitol Plumbing & Heating Supply Co. v. Snyder* (1969), 104 Ill. App. 2d 431, 244 N.E.2d 856.) We also do not believe that Wolfe's billing method of using randomly sequenced invoices calls to question the truthfulness of the invoices. The evidence showed that Wolfe had always used randomly sequenced invoices during the course of the Pebble Creek project, and prior to GHMS' financial difficulties, those invoices were apparently paid without question. Thus, we do not find anything particularly unusual about the questioned invoices being randomly sequenced. Moreover, the group of invoices submitted by Wolfe after walking off the job is not unusual because the evidence supports the finding that Wolfe held up billing at the request of Stevenson.

As to GHMS' contention that Wolfe engaged in the practice of padding bills in that more hours worked were shown on the invoices than were transcribed in the time sheets. The trial court, however, gave due credit for all those hours that were questionable, which in actuality were very few compared to the total hours spent on the project by Wolfe. The trial court also gave credit for items purchased but unused on the project. Our review of the evidence reveals the trial court did not abuse its discretion in awarding damages in the sum of $107,104.71.

■ Finally, GHMS contends that the judgment of the trial court was not final and appealable because the mortgage foreclosure action remained unresolved. We disagree. This separate contract action involved only GHMS and Wolfe. Lyons had no interest in this aspect of the litigation. Although it is true that Wolfe could attempt to execute on the Pebble Creek property to satisfy the judgment, that process would surely be halted because of the pending foreclosure action. Execution against the Pebble Creek property, however, is not the only method available to Wolfe in attempting to satisfy the judgment and there is no good reason why Wolfe should not be allowed to pursue those avenues. "An order is final [and appealable] if it disposes of the rights of the parties either on the entire controversy or some definite and [distinct] part of it." (*McGrew v. Heinold Commodities, Inc.* (1986), 147 Ill. App. 3d 104, 109, 497 N.E.2d 424.) Simply because other counts of a complaint remain unresolved that are related to the same general occurrence is not fatal to an appeal. This judgment is appealable because it disposes of a distinct cause of action between all of the parties involved. *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.

The decision of the trial court granting judgment in favor of Wolfe and against GHMS in the amount of $107,104.71 on Wolfe's oral contract claim is affirmed.

### WOLFE'S APPEAL

Wolfe also appealed a part of the circuit court's order dated February 16, 1989, wherein judgment was entered in favor of GHMS and Lyons and against Wolfe on Wolfe's counterclaim for foreclosure of the mechanic's lien. In essence, the trial court found Wolfe to be a subcontractor and as such failed to give notice to the owner and mortgagee within 90 days of completing the work as required by section 24 of the Illinois Mechanics' Liens Act. (Ill. Rev. Stat. 1987, ch. 82, par. 24.) Wolfe raises two issues for review. First, whether Wolfe is a subcontractor within the meaning of the Illinois Mechanics' Liens Act, and second, whether Wolfe is entitled to prejudgment interest under the Mechanics' Liens Act.

Stevenson, although a partner in GHMS, was also the owner of R.I.C. Construction, which GHMS contends was the original contractor to which Wolfe furnished labor and material, thereby making Wolfe a subcontractor. It is also uncontradicted that Stevenson was a beneficial owner of the property and acting as agent for GHMS in the development of Pebble Creek. The question thus becomes whether Stevenson was purely a partial owner and agent of GHMS

or was he an original contractor in his capacity as owner of R.I.C. Construction. Determining Stevenson's status will necessarily determine Wolfe's status.

In answering the question of Stevenson's status, we must keep in mind that on GHMS' appeal, we affirmed the trial court's decision that an oral agreement existed between Wolfe and GHMS. In fact, GHMS has admitted in its pleadings and throughout its briefs on appeal that contracts were entered into with Wolfe. It is also undisputed that GHMS is the beneficial owner of the Pebble Creek property. Section 1 of the Illinois Mechanics' Liens Act (the Act), in pertinent part, provides:

> "Any person who shall by any contract *** with the owner of a lot or tract of land, or with one whom the owner has authorized *** to improve the lot or tract of land *** or to furnish material *** on the order of his agent *** is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land *** for the amount due to him for such material, fixtures, apparatus, machinery, services or labor, and interest from the date the same is due." Ill. Rev. Stat. 1987, ch. 82, par. 1.

■ Stevenson, as authorized agent for GHMS, entered into a contract with Wolfe, and this being the case, it is clear that Wolfe must be considered a contractor under the Act. It is true that invoices sent by Wolfe were directed to R.I.C. Construction, that lien waivers were executed by Wolfe in favor of R.I.C. Construction, and R.I.C. Construction filed a statement with Lyons listing Wolfe as a subcontractor. Nonetheless, it is entirely inconsistent for the circuit court to determine that an oral agreement existed between Wolfe and GHMS and yet find Wolfe a subcontractor of R.I.C. Construction on the apparent basis that Wolfe's contract was entered into with R.I.C. Construction. If Wolfe was a subcontractor, then no cause of action in contract would exist for Wolfe against GHMS because there would be no privity of contract between the parties. (See *Kilburg v. Petrolagar Laboratories, Inc.* (1935), 280 Ill. App. 527; *I. Lurya Lumber Co. v. Goldberg* (1916), 198 Ill. App. 374; *Baker v. Mayer* (1911), 163 Ill. App. 391; *Knickerbocker Ice Co. v. Murphy* (1895), 59 Ill. App. 3d 39.) Thus, we must decide which finding of the court is appropriate, and since GHMS has admitted throughout that, at a minimum, a series of contracts existed between Wolfe and GHMS and other evidence supports the existence of a contract as detailed in GHMS' appeal, we consider the trial court's finding of a contract between Wolfe and GHMS to be correct, and Wolfe is necessarily then

a contractor under section 1 of the Act. We further consider that Wolfe, as a contractor, is entitled to interest from the date payments were due pursuant to section 1 of the Act. Ill. Rev. Stat. 1987, ch. 82, par. 1.

We must next consider whether Wolfe's mechanic's lien has priority over Lyons' mortgage for foreclosure purposes. To this extent, the central question is whether Wolfe is bound by the contract date of April 29, 1983, as stated in Wolfe's claim for lien and attached to Wolfe's original verified pleading, or whether Wolfe's amended pleading allegation of August 23, 1982, which was allowed without objection, is the proper date for consideration under this cause of action. The significance of this amendment is that April 29, 1983, is subsequent to the date Lyons' mortgage was recorded, but August 23, 1982, precedes the recording date of the mortgage. As in Wolfe's contract claim, GHMS admitted a contract existed between the parties on August 23, 1982, but denied the scope of that agreement. The principal party affected, however, is the mortgagee Lyons and not GHMS.

Lyons argues that section 7 of the Act bars Wolfe's lien for any date prior to April 29, 1983, in that section 7 of the Act requires that the contract inception date be stated in the claim for lien and the Act implicitly prohibits a lien claimant from making any amendments to the claim for lien after four months from the date of completion of the contract. Therefore, Lyons asserts Wolfe is bound to the date of April 29, 1983, in that the sworn affidavit of the claim for lien as well as Wolfe's original, verified pleadings are judicial admissions which cannot be avoided by the filing of amended pleadings. As authority, Lyons primarily relies on the cases of *Chambers v. Appel* (1946), 392 Ill. 294, 64 N.E.2d 511, *Mutual Services, Inc. v. Ballantrae Development Co.* (1987), 159 Ill. App. 3d 549, 510 N.E.2d 1219, *Premier Electrical Construction Co. v. La Salle National Bank* (1985), 132 Ill. App. 3d 485, 477 N.E.2d 1249, and *Federal Savings & Loan Insurance Corp. v. American National Bank & Trust Co.* (1983), 115 Ill. App. 3d 426, 450 N.E.2d 1360. These decisions, however, are distinguishable.

Initially, we do not agree with Lyons' position that the section 7 claim for lien must state the date of the contract. Section 7 only requires that the claim for lien be verified by the contractor, his agent or employee; contain a brief statement of the contract; state the balance due under the contract after allowing all credits; and give sufficient description of the lot[s] affected. If an error is made in any allegations which the Act does not require in the claim for

lien, such error does not invalidate the statement or defeat the lien. (See *United Cork Cos. v. Volland* (1937), 365 Ill. 564, 7 N.E.2d 301; *Inter-State Building & Loan Association v. Ayers* (1898), 177 Ill. 9, 52 N.E. 342; *Culver v. Schroth* (1894), 153 Ill. 437, 39 N.E. 115.) This interpretation does not derogate from the purpose of section 7, which provides incumbrancers or owners of property with notice of the existence, nature and character of a lien, to enable third parties to determine from the claim whether the lien is enforceable. (*Schmidt v. Anderson* (1911), 253 Ill. 29, 97 N.E. 291.) Nor does this interpretation violate the notion that the Act is to be strictly construed with reference to the requirements upon which the lien depends. (*Waldbillig Woodworking, Inc. v. King Arthur's North, Ltd.* (1982), 104 Ill. App. 3d 417, 432 N.E.2d 1048.) This interpretation does, however, seem to strike a balance between the Mechanics' Liens Act and sections 2—613 and 2—616 of the Illinois Code of Civil Procedure allowing, respectively, for pleading in the alternative (Ill. Rev. Stat. 1987, ch. 110, par. 2—613) and amending pleadings prior to judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—616).

Keeping in mind that a statement of the contract date in a section 7 claim for lien is not a necessary prerequisite to enforcing the lien, we therefore determine that Wolfe's verified claim for lien and original pleadings alleging a contract date of April 23, 1983, are not binding judicial admissions. This result is, in fact, born out by the *Chambers* case Lyons has cited as authority for its position. In *Chambers*, the court determined that "admissions of fact contained in pleadings which have been withdrawn, dismissed or superseded by an amended pleading *** are admissible in evidence as admissions against interest. They are not conclusive against the party making them and may be explained or contradicted." (*Chambers v. Appel*, 392 Ill. at 307.) The court did distinguish, however, those cases wherein a party has relied to its detriment on the sworn statements or pleadings of another party and determined that in such a situation, the admissions are conclusive on the party making them. No such evidence has been presented here since Wolfe's claim for lien was filed in 1984, well after Lyons had filed its mortgage. In *Federal Savings*, another case cited by Lyons, the court determined that a contractor could not amend its claim for lien after the four month limitation period under section 7 had expired, thereby defeating the contractor's claim for lien. The defect in the claim for lien the court focused upon concerned the contractor's failure to allege facts entitling it to a lien pursuant to section 1 of the Act. (Ill. Rev. Stat. 1987, ch. 82, par. 1.) Thus, there was no way for a third party to as-

certain whether the lien was enforceable. (*Federal Savings & Loan Association v. American National Bank*, 115 Ill. App. 3d 426, 450 N.E.2d 820.) Wolfe's claim for lien is not defective in this manner.

Additionally, an allegation of when a contract is entered into is not wholly a statement of fact, but at most, a mixed factual and legal question. A pure statement of fact would be a statement of when work commenced on a project. It is the province of the trial court to determine the existence and terms of a contract. (*Premier Electrical Construction Co. v. La Salle National Bank* (1985), 132 Ill. App. 3d 485, 477 N.E.2d 1249.) Therefore, to the extent that case law exists stating that prior verified statements of fact are binding judicial admissions, those cases are inapplicable to the present situation because Wolfe's statement of the contract inception date is not a pure statement of fact, but at least in part, a conclusory statement or opinion.

The circuit court found that an oral contract existed between Wolfe and GHMS and that it was entered into on August 23, 1982. Based on this finding, it is impossible for Wolfe to be a subcontractor within the meaning of the Mechanics' Liens Act. We therefore reverse the decision of the trial court as against the manifest weight of the evidence with instructions to grant a judgment of foreclosure in favor of Wolfe and further remand the cause to the circuit court to assess statutory interest due Wolfe as provided in section 1 of the Mechanics' Liens Act.

Reversed and remanded.

GHMS' appeal is therefore affirmed; Wolfe's appeal is reversed and remanded.

STOUDER and WOMBACHER, JJ., concur.