METROPOLITAN FEDERAL BANK
OF IOWA, Appellant,

v.

A.J. ALLEN MECHANICAL CON-
TRACTORS, INC. and Baker
Electric, Inc., Appellees,

and

ABAS Partnership, a General Partner-
ship, A.Y. Al–Shash, Ala Daghestani,
Jeffrey Smith, Wayne Dennis Supply
Company, Hansen Contractors, Ltd.,
Kennedy and Company, Allied Roofing
Services, Inc., and Color, Inc., a Divi-
sion of Allied, Defendants.

No. 90–1380.

Supreme Court of Iowa.

Nov. 20, 1991.

Rehearing Denied Dec. 30, 1991.

William R. Stiles of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

Curtis G. McCormick and Carol A. Wendl of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellee A.J. Allen Mechanical Contractors, Inc.

Roger T. Stetson and Margaret C. Callahan of Belin Harris Lamson McCormick, P.C., Des Moines, for appellee Baker Elec., Inc.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case presents the question of whether certain contractors waived their rights to claim mechanics' liens prior in right to the claims of a construction mortgagee. The district court concluded that the con-

tractors had not waived their rights. We agree and affirm.

I. *Background facts and proceedings.* This dispute arose out of the construction of a strip mall in Des Moines by ABAS Partnership and its individual partners A.Y. Al–Shash, Ala Daghestani, and Jeffrey Smith (ABAS). ABAS began construction of the project in early 1986, obtaining financing in late October from First Financial Savings Bank, the predecessor-in-interest to plaintiff Metropolitan Federal Bank of Iowa (Metropolitan).

None of the parties contest the fact that certain contractors began work on the project before ABAS obtained its construction financing from Metropolitan. Defendant A.J. Allen Mechanical Contractors, Inc. (Allen) commenced work on the project on January 15, 1986. Hansen Contractors, Ltd. (Hansen), who is not a party to the present appeal, commenced its work on July 23, 1986. Defendant Baker Electric, Inc. (Baker) started its work on September 4, 1986. Two other contractors, not parties to the present appeal, commenced work on September 15, 1986.

ABAS did not obtain construction financing from Metropolitan until October 21, 1986. ABAS obtained a four million dollar loan from Metropolitan, giving the bank a mortgage on the mall premises in return. Metropolitan recorded its mortgage on October 24, 1986.[1] At that time, none of the contractors involved in this appeal was aware of Metropolitan's involvement in the project.

On October 24, 1986, the date that Metropolitan recorded its mortgage, sums were paid to certain of the contractors for work previously done on the project. Allen was paid $161,238.75. In exchange for payment, Allen submitted to ABAS four documents entitled "Subcontractor's *Partial Waiver* of Lien" (emphasis in original). These lien waivers were dated July 30, August 29, September 26, and October 24, 1986, respectively. They purported to

---

1. The mortgage in favor of Metropolitan was modified in order to secure additional sums of $500,000, $500,000, and $250,000 lent to ABAS.

These modifications were recorded on April 27, June 2, and August 25, 1987.

waive Allen's rights to claim mechanic's and other liens for work furnished up to and including the date of partial payment.[2]

Baker also received partial payment on October 24, 1986. In consideration for receiving $11,555.31 for work previously performed, Baker submitted to ABAS, on the date of payment, two lien waivers, similar to those submitted by Allen, purporting to waive Baker's rights to liens on ABAS's property for work rendered or furnished by Baker.[3]

Additionally, Hansen received, on October 24, 1986, $633,625 for work previously performed on the project. Hansen also submitted to ABAS a lien waiver, similar to those submitted by Allen and Baker, purporting to waive any right to claim a lien for work furnished prior to the date of the lien waiver. Hansen did not submit this waiver to ABAS until November 5, 1986, the date stated thereon.

The sums paid to these contractors were drawn from the funds provided to ABAS by Metropolitan's construction loan. Although there was testimony in the hearing before the district court that these payments were drawn on Metropolitan's own checks, representatives of the contractors testified that none of them was aware of the fact that Metropolitan was the source of construction financing.

Work continued on the project through 1986 and 1987. At periodic intervals throughout construction, the contractors would submit invoices or other requests for progress payments. With each such request, the contractors would submit lien waivers, as outlined above, containing language purporting to waive their rights to claim mechanics' liens. The contractors were paid from draws made on Metropolitan's loan. In all, ABAS made seven draws on the loan from Metropolitan subsequent to the first draw of October 24, 1986. The last draw came on May 29, 1987.

ABAS ultimately defaulted on its loan from Metropolitan. Allen thereafter filed a mechanic's lien on November 23, 1987, in the amount of $89,995.10 for work for which it had not yet been paid. Baker filed a mechanic's lien on December 4, 1987, in the amount of $82,085.91. Hansen also filed an amended mechanic's lien on July 20, 1988, in the amount of $339,702.70. Several other contractors not involved in this appeal also filed mechanic's liens.

Metropolitan then filed a petition in equity seeking judgment on its note and foreclosure of its mortgage. After appropriate pleadings, Metropolitan and certain contractors filed motions requesting the district court to determine the priority of the parties' respective claims and liens. After a trial, the district court entered an order establishing the priority of the parties' respective claims and liens, concluding that the liens of Allen, Hansen, and Baker, respectively, were prior in right to Metropolitan's construction mortgage. The court also found that the contractors had not intended to alter their priority positions, in relation to Metropolitan's construction mortgage, by periodic use of the lien waivers.

Metropolitan appealed, and we now consider its contentions.

II. *Interpretation of Iowa Code section 572.18.* As an initial matter, we note that the scope of our review is de novo since this case was maintained and tried as an equitable proceeding in the district court. *See* Iowa R.App.P. 4.

This case involves an interpretation of Iowa Code section 572.18 (1991), which provides, in pertinent part:

Mechanics' liens shall be preferred to all other liens which may attach to or upon a building or improvement and to the land upon which it is situated, except liens of record prior to the time of the original commencement of the work or improvements. However, construction

---

2. The stated consideration for each of these four waivers was $38,916.75, $49,134, $73,188, and $97,338.90. On October 24, 1986, Allen was paid the stated consideration for only the first three waivers.

3. The stated consideration for each of these two waivers was $11,555.31 and $16,103.12. On October 24, 1986, Baker was paid the stated consideration for only the first of the two waivers.

mortgage liens shall be preferred to all mechanics' liens of claimants who commenced their *particular work or improvement* subsequent to the date of the recording of the construction mortgage lien....

(Emphasis supplied.) Metropolitan contends that the phrase "particular work or improvement" refers only to that for which a claimant is unpaid and which forms the basis for the filing of a mechanic's lien. Metropolitan argues that the priority of such a claimant's lien thus relates back only to the earliest day that labor or materials were supplied on that particular, unpaid claim. It believes that, since the "particular work or improvement" for which Allen and Baker remain unpaid was provided subsequent to the recordation of Metropolitan's construction mortgage, the mechanic's liens of Allen and Baker are subordinate to Metropolitan's construction mortgage.

Allen and Baker argue that the phrase "particular work or improvement" refers to any work or material supplied by the mechanic lien claimant. They further contend that the priority of such a claimant's lien thus relates back to the first date that any labor or materials were supplied to the project by that particular claimant, and that such priority is not affected by any payments for work done before the construction mortgage was recorded. Allen and Baker believe that, since they commenced their "particular work or improvement" on the project prior to the recordation of Metropolitan's construction mortgage, their mechanics' liens take priority over Metropolitan's claim. We agree with this interpretation of the statute.

■ A. *General principles.* Before we construe Iowa Code section 572.18, we note, as a general matter, that the establishment of a mechanic's lien requires proof of an express or implied contract between the person or entity supplying the labor or materials and the owner of the property to which the lien is to attach. *Society Linnea v. Wilbois,* 253 Iowa 953, 959, 113 N.W.2d 603, 606 (1962). The lien arises on the day work commences under the contract, and attaches for all services and materials furnished. *See Northwestern Nat'l Bank v. Metro Center, Inc.,* 303 N.W.2d 395, 398 (1981) (lien in such case actually predates filing of the lien, which then relates back to the date of work commencement); *Society Linnea,* 253 Iowa at 959, 113 N.W.2d at 606–07. Thus, where the work is performed under a single, continuous contract, partial payment does not sever the contract such that the lien dates only to the start of work for which the claimant has not yet been paid. *Id.* at 959, 113 N.W.2d at 606–07 ("Whatever [the contractor] may do under such contract dates, as to [the] lien, from the day [the contractor] commences work or furnishes material and not from the date of the performance of the several parts of [the contractor's] undertaking."); *Wood v. Ball,* 194 Iowa 50, 52, 188 N.W. 888, 889 (1922) (same).

The parties do not question whether the contracts between the individual contractors and ABAS were single, continuous contracts. For purposes of this appeal, we assume that they were. Accordingly, we believe that the general principles outlined above support the contentions of Allen and Baker that the priority of their mechanics' liens relates back to the commencement of their own particular work on ABAS's strip mall. Since each contractor commenced work on the project before Metropolitan recorded its construction mortgage, under Iowa Code section 572.18 the mechanics' liens of Allen and Baker ordinarily would take priority over Metropolitan's construction mortgage.

■ B. *History of section 572.18.* In addition to the above principles, our conclusion is supported by statutory construction of Iowa Code section 572.18 and an analysis of its history.[4] Prior to 1984, the statute simply provided that mechanics' liens

---

**4.** We do not believe that the enactment of the amended version of section 572.18 altered the general principles outlined above. Longstanding principles such as these should not be presumed abandoned unless the intent to work

such a change "plainly appears by express declaration or necessary or unmistakable implication[.]" *Hines v. Illinois Cent. Gulf R.R.,* 330 N.W.2d 284, 289 (Iowa 1983).

shall be preferred to all other liens, except those of record prior to the time of the original commencement of work or improvements on the property. *See* Iowa Code § 572.18 (1983). The second sentence of the present version relating the preference to be accorded certain construction mortgages was not present in the prior version of the statute. *Cf.* Iowa Code § 572.18 (1991).

This second sentence was added in 1984 in response to this court's decision in *Barker's Inc. v. B.D.J. Dev. Co.*, 308 N.W.2d 78 (Iowa 1981). We held in *Barker's* that a mechanic's lien had priority over a recorded construction mortgage, even though the particular lienor did not commence work on the property to which the lien attached until after the mortgage was recorded; this was because other mechanics had commenced work on the property prior to the recording of the mortgage. *Id.* at 83. We, therefore, allowed, in accord with the then-existing version of Iowa Code section 572.-18, the particular lienor's lien to relate back to the time of the commencement of *any* work on the project.

The legislature amended Iowa Code section 572.18 in 1984, adding the second sentence of the present version of the statute:

However, construction mortgage liens shall be preferred to all mechanics' liens of claimants who commenced their *particular work or improvement* subsequent to the date of the recording of the construction mortgage lien.

1984 Iowa Acts ch. 1215, § 1 (codified at Iowa Code § 572.18 (1985)) (emphasis supplied). We believe the phrase "particular work or improvement" in amended section 572.18 refers to any work or material supplied by the particular mechanic lien claimant. We do not agree with Metropolitan's contention that the phrase only refers to that particular work or material for which a mechanic lien claimant remains unpaid. This is because our statements in *Barker's* only made distinctions between the work of the claimant contractor and the work of other contractors; we made no distinction between particular stages of work supplied by an individual claimant. We do not be-

lieve that the legislature, in amending section 572.18, intended anything other than to address the distinction we actually made.

To interpret the statute as Metropolitan contends would cause a mechanic lien claimant's priority in relation to a construction mortgage to depend entirely upon the payment scheme adopted by the lien claimant and the owner of the property. This would force lien claimants to refuse a scheme whereby they are paid for their work in periodic installments. In order to maintain the priority of its lien under Metropolitan's interpretation of the statute, a claimant would have to forego any payment until it had completed all of its particular work on the premises. This, of course, does not accord with the realities of the construction industry. Contractors and suppliers need periodic progress payments in order to pay their laborers and meet other expenses. *Accord Wood*, 194 Iowa at 52, 188 N.W. at 889 (owner's payment to contractor from mortgage proceeds was a mere item of credit on contractor's account and did not have the effect of giving the mortgagee priority over all future-accruing mechanic's lien rights).

For the foregoing reasons, we decline to adopt Metropolitan's interpretation of the statute. We hold that the phrase "particular work or improvement" in Iowa Code section 572.18 refers to any work or material supplied by the particular mechanic lien claimant. Since Allen and Baker both commenced their particular work on ABAS's project prior to Metropolitan's recordation of its construction mortgage, their liens ordinarily would take priority over Metropolitan's claim.

■ III. *Interpretation of the lien waivers.* The next question we must consider is whether the parties intended, by the contractors' periodic use of the lien waiver documents, to waive the priority of the contractors' mechanics' liens. Metropolitan argues that the language of the waivers is clear and unambiguous, waiving the contractors' rights to claim mechanics' liens prior in right to Metropolitan's construction mortgage. Allen and Baker assert that they never intended, by use of the

waivers, to subordinate their mechanics' liens to Metropolitan's construction mortgage. They contend that the waivers merely acknowledged payment of certain sums, waiving their rights to claim mechanics' liens for those particular amounts paid. Thus, they believe that any mechanic lien rights accruing subsequent to issuance of the lien waivers relate back to the commencement of their work on ABAS's project and thus are prior to Metropolitan's claim.

On October 24, 1986, when Metropolitan recorded its mortgage, Allen was paid the sum of $161,238.75. In exchange, Allen submitted to ABAS four lien waiver documents. These waivers provided, in part, as follows:

> [T]he undersigned ... does hereby waive and release any and all lien or claim of, or rights to, lien under statutes relating to mechanics' and other liens, ... on account of labor, services, material, fixtures, apparatus or machinery furnished up to and including ... upon payment....[5]

On the same day, Baker was paid the sum of $11,555.31. In exchange, Baker submitted to ABAS two lien waivers. These waivers provided, in part, as follows:

> [T]he undersigned hereby waives and releases any lien upon or against the premises ... and the improvements thereon, on account of any labor, materials and services rendered or furnished....

■ A. *General principles.* In interpreting the meaning of written instruments such as these lien waiver documents, we seek to give effect to the intention of the parties in conformity with a reasonable application of the circumstances under which the instrument was executed. *First Nat'l Bank v. Smith*, 331 N.W.2d 120, 122 (Iowa 1983) (interpreting mechanics' lien waiver document); *Hamilton v. Wosepka*, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967)

(extrinsic evidence which throws light on the parties' contract is necessarily to be regarded as relevant to ascertain proper legal meaning of agreement); Iowa R.App.P. 14(f)(14); *see also Portland Elec. & Plumbing Co. v. Simpson*, 59 Or.App. 486, 651 P.2d 172 (1982) *aff'd*, 61 Or.App. 266, 656 P.2d 394 (1983) (scope and effect of lien waiver is to be determined from language of document, sequence of events, and surrounding circumstances). *But see Country Serv. & Supply Co. v. Harris Trust & Sav. Bank*, 103 Ill.App.3d 161, 58 Ill.Dec. 599, 430 N.E.2d 631 (1981) (lien waivers were unambiguous, precluding admission of extrinsic evidence to aid in their interpretation). *See generally* 53 Am. Jur.2d *Mechanics' Liens* § 294, at 828–30 (1970).

■ A contractor may waive its right to a mechanic's lien or be estopped from asserting it. *Joyce Lumber Co. v. Marshalltown Constr. League*, 226 Iowa 274, 280, 283 N.W. 912, 915 (1939). Although there may be a waiver of such a lien, in order for it to be effective, it must be clear, satisfactory, unambiguous, and free from doubt. *Eclipse Lumber Co. v. Bitler*, 213 Iowa 1313, 1316, 241 N.W. 696, 698 (1932). All doubts about the waiver must be resolved in favor of the lien. *Id.* at 1316, 241 N.W. at 698.

B. *Language of the documents.* Upon our de novo review of the transactions at issue, we conclude that Allen and Baker did not intend to waive the priority of their mechanics' liens by periodic use of the lien waiver documents.

We find support for our conclusion in the language of the waivers. The language of the waivers employed by Allen specifically waived Allen's rights to mechanic's liens only on account of labor or material "furnished up to and including" the date of payment. There is no language in these waivers purporting to waive rights accruing subsequent to the date of payment, nor

---

5. The waivers which Hansen provided to ABAS similarly provided, in pertinent part:

>     THE UNDERSIGNED ... do(es) hereby waive and release any and all lien and claim or right of lien under the statutes of the State of IOWA relating to Mechanic's Liens ... on account of labor or services, material, fixtures or apparatus heretofore furnished to this date by the undersigned for the above described premises.

is there any language purporting to waive Allen's priority. *Cf. Smith,* 331 N.W.2d at 122–23 (lien waiver releasing "any and all my/our right or claim of rights, to file and establish a mechanic's lien" did not release contractor's perfected lien for unpaid sums); *see also Amfac Dist. Corp. v. J.B. Contractors, Inc.,* 146 Ariz. 19, 703 P.2d 566 (App.1985) (waivers releasing any liens on account of labor or material furnished "to date" waived all lien rights lienor would have had for materials supplied prior to date last waivers were signed); *Lyons Fed. Trust & Sav. Bank v. Moline Nat'l Bank,* 193 Ill.App.3d 108, 140 Ill.Dec. 282, 549 N.E.2d 933 (1990) (execution of lien waivers did not bar claim for additional payments; waivers were executed by contractor in order to receive partial payment and were intended to be partial lien waivers as to particular work); *Saginaw Lumber Co. v. Stirling,* 305 Mich. 473, 9 N.W.2d 680 (1943) (waiver of any right of lien "which I now have" did not waive lien for materials furnished thereafter); *Sussel Co. v. First Fed. Sav. & Loan Ass'n,* 304 Minn. 433, 232 N.W.2d 88 (1975) (waiver of "all rights acquired to date" did not waive rights acquired subsequent to execution of lien waiver); *Engler Bros. Constr. Co. v. L'Allier,* 280 Minn. 208, 212, 159 N.W.2d 183, 186 (1968) (same); *Portland Elec. & Plumbing Co.,* 59 Or.App. at 486, 651 P.2d at 172 (given circumstances of lien release's execution as part of each progress payment, release waived lien rights only as to materials for which payment was made by a particular check); *Duckett v. Olsen,* 699 P.2d 734 (Utah 1985) (waiver releasing right to claim a lien for work "furnished on or before the date of" payment did not prevent lien for subsequent work from relating back to commencement of construction).

The language in the waivers employed by Baker is somewhat broader than the language in Allen's waivers. These simply waived any lien against ABAS's property on account of any labor or material "rendered or furnished." Although these waivers do not contain the same limiting language as Allen's waivers, we nevertheless do not believe that the language employed expresses an intent to waive mechanic's lien rights accruing subsequent to the date of the waivers. Had Baker intended to waive subsequent lien rights, the waivers could easily have been modified to waive rights for work "to be performed" or for work performed "hereafter." *Cf. Saginaw Lumber Co.,* 305 Mich. at 473, 9 N.W.2d at 680 (waiver of mechanic's lien, on which the words "or which may hereafter accrue" were stricken after provision for waiver of any right of lien "which I now have," did not waive lien for materials furnished thereafter); *Durant Constr., Inc. v. Gourley,* 125 Mich.App. 695, 336 N.W.2d 856 (1983) (mechanic lien waivers were complete waivers; lien waived rights which lienor "may have hereafter"). Indeed, Metropolitan employed such prospective language in a subordination agreement it entered into with Hansen when both parties were involved in a prior construction project.

C. *Intention of the parties.* We find additional support for our conclusion in the contractors' testimony that they merely intended the lien waivers to be receipts for partial payment. None of the contractors testified that they intended to waive anything other than the right to claim liens for the amounts actually paid to them. The contractors certainly did not intend to subordinate any future-accruing mechanics' lien rights to Metropolitan's construction mortgage: representatives of Allen, Baker and Hansen testified that they were personally unaware that Metropolitan was to become involved in the project at the time they submitted their initial lien waivers. *See Joyce Lumber Co.,* 226 Iowa at 281–82, 283 N.W. at 916 (contractor could not equitably be denied a prior lien where the only information about the financing shown to have been given to him was subsequent to the time he agreed to do the work and after his contract was partially performed).

The lack of intent of Allen and Baker to subordinate future-accruing rights to Metropolitan's construction mortgage is further evidenced by the fact that the contractors were never fully paid "to date." ABAS retained ten percent of the invoice amounts with each progress payment it made to the contractors. We do not be-

lieve the contractors intended to waive their rights to mechanics' liens for these sums which they had already earned, but had not yet been paid. And if the contractors had intended to waive all rights to mechanics' liens as of the first draw on the construction loan, as Metropolitan contends, then there would have been no need for ABAS or Metropolitan to accept the additional lien waivers submitted subsequent to those given on October 24, 1986.

■ D. *Summary.* For the foregoing reasons, we conclude that the lien waivers periodically submitted to ABAS by Allen and Baker were intended, as between ABAS and the contractors, as a waiver of the contractors' rights to assert mechanics' liens only for that work for which the contractors had been paid from Metropolitan's construction loan proceeds. More specifically, we hold that any mechanic lien rights of Allen and Baker accruing subsequent to issuance of the initial lien waiver documents relate back to the commencement of their work on ABAS's project and thus are prior to Metropolitan's claim on its construction mortgage.

IV. *Metropolitan's estoppel arguments.* Finally, Metropolitan contends that defendants Allen and Baker are estopped from denying that the lien waiver documents signed by them effectively caused their mechanics' liens to be subordinate to Metropolitan's recorded construction mortgage. Metropolitan relies on both the theories of promissory estoppel and equitable estoppel. Without unduly extending this opinion, we find no merit in either theory under this record.

V. *Disposition.* In summary, we conclude that Allen and Baker did not waive the priority of their mechanics' liens, nor are they otherwise estopped from asserting that their claims are prior in right to Metropolitan's construction mortgage. We therefore affirm the district court's decision that Metropolitan's claim is subordinate to those of Allen and Baker.

AFFIRMED.